THE GULF, COLORADO AND SANTA FE RAILWAY CO. v. M. S. KEITH.

No. 6290.

1. **Damages to Horses.**—Where an animal is so injured (by the actionable negligence of a railway company) that its usefulness is not only impaired but destroyed, the measure of damages is its value, reasonable compensation for attention, and expenses in a prudent effort to effect a cure.

2. **Charge—Liability of Railway Company.**—The court charged, "If a railway company does injury to property the company will be responsible for the damage caused by such injury, provided the person whose property was injured did not by his own negligence contribute to the injury." *Held:*

   1. That the charge correctly gave the law of liability of railways for injuring stock upon the track except at public crossings.

   2. That a team escaping from its driver and running at will and stopping upon a railway track where injured is under the law for injuries to stock.

   3. That as to a wagon to which the team was hitched and which was injured the charge was erroneous in not defining the care want of which would render the railway company liable for the injury.

3. **Drawing the Jury.**—The names of the jurors should be drawn from the jury box and the lists made after the parties have announced ready for trial.

APPEAL from Bosque. Tried below before Hon. J. M. Hall.

This is an appeal from a judgment for $240 and costs in favor of Keith.

The suit was for damages for the value of two horses at $125 each, $60 feed for the horses while caring for them, $80 for care and attention to them, and $40 expended in repairs on wagon.

The petition alleged that plaintiff was driving along the road from Meridian in Bosque County to McLennan County in a wagon drawn by his two horses; that without his fault the horses became frightened and attempted to run away; a bridle bit broke, they became unmanageable, ran the wagon on a bank, threw him out on the ground and injuring him so that he became insensible and could no longer manage the horses; that they ran in the direction of defendant's railroad, reached the crossing and stopped with the wagon; that defendant's locomotive and train was by defendant's servants negligently and recklessly run against the horses and wagon, destroying the wagon and so injuring the horses as to render

them unfit for use and valueless; that defendant's servants could have avoided the injury by the use of ordinary care; that he was compelled to expend $40 to repair his wagon, $60 feed for the horses while trying to save them from permanent injury, and that his attention to them for the four months so attempting to save them was worth $80. He failed to preserve their usefulness, and they were a total loss.

Defendant excepted to that part of the petition asking compensation for the feed of the horses because it was not alleged to be extra feed, or that the feed would not have been necessary if the horses had not been injured, and to that part of the petition asking compensation for attention to the horses.

Defendant answered by general denial and plea of contributory negligence; that plaintiff was so intoxicated that he lost control of himself and team, permitted them to become separated from him, that they proceeded unattended along the dirt road to the railroad crossing where they stopped and were struck by the train, without fault or negligence of defendant's servants. The court overruled defendant's exceptions. Trial resulted in verdict and judgment for plaintiff for $240. Other facts and proceedings necessary to an understanding of the case are stated in the opinion.

*W. M. Flournoy*, for appellant. — 1.   The trial amendment not alleging that the feed for which appellee charged was extra feed occasioned by the alleged injury to the horses, the exception going to this should have been sustained.   Davidson v. M. C. Ry. Co., 13 Am. and Eng. Ry. Cases, 651.

2.   The horses being the property of appellee it was his duty to attend to them, and appellant could not be held liable for payment for the loss of their services.

3.   The objection to the jury list was well taken.   Rev. Stats., arts. 3088–3097.

4.   The charges requested by appellant properly presented the case to the jury on the question of negligence and contributory negligence and the contingent liability of appellant under the facts in the case not covered by the charge of the court.   H. & T. C. Ry. v. Smith, 52 Texas, 178; I. & G. N. Ry. v. Graves, 59 Texas, 330; G. H. & S. A. Ry. v. Bracken, 59 Texas, 71; H. & T. C. Ry. v. Waller, 56 Texas, 331; Pierce on Rys., 405, 406, 425, 426.

5.   The court erred in the first paragraph of its charge to the jury in defining the liability of a railway company for injury to property in not stating that said company's liability is dependent upon its negligence in causing said injury.

No brief for appellee reached the Reporter.

COLLARD, JUDGE.—The general rule undoubtedly is that where there is a total loss of personal property resulting from the negligence of the defendant the measure of damages is the value of the property at the time of the injury and interest. This rule is not inflexible. Where an animal is so injured that its usefulness is not only impaired but destroyed, the measure of damages is its value, reasonable compensation for attention, and expenses in prudent efforts to effect a cure.

It is said in Shearman & Redfield on Negligence: "The law would be inhuman if it should prescribe a different rule even where the animal eventually dies, since it would then offer an inducement to the owner to neglect its sufferings." Sec. 603, and note 2.

If the plaintiff in good faith attempted to cure his horses after they were injured and for that purpose fed and attended to them, and they became from their injuries useless, he should have as damages reasonable compensation for his attention to them and expenses incurred besides their value, provided of course he is entitled to recover at all. There was no error in overruling defendant's exceptions to plaintiff's claim for such damages.

The court instructed the jury as follows: "If a railway company does injury to property the company will be responsible for the damage caused by such injury, provided the person whose property was injured did not by his own negligence contribute to the injury." This charge is assigned as error because it does not make the liability of the company depend upon its negligence. The injury occurred in 1881. The horses and wagon were on the railroad crossing, a neighborhood crossing about 300 yards from the public county road crossing. Plaintiff had been driving along the road at night; from some cause his team became frightened and ran away; plaintiff was thrown from the wagon; the horses went on and lodged with the wagon at the crossing. In a short time thereafter they were knocked off by a train and the alleged injuries were sustained. It does not appear but that the defendant's right of way should have been fenced at this point; it seems that there was a public crossing about 300 yards away on a public county road.

The statute makes railway companies liable to the owners for damage or value of stock injured or killed by their locomotives or trains, without regard to negligence, except where the right of way is fenced, in which case they are only bound to ordinary care. 2 Sayles' Civ. Stats., art. 4245. This statute is applicable to the injury done by defendant's train to the horses, and the court's charge in reference to them was correct if the injury was not done at a public crossing. I. & G. N. Ry. v. Cocke, 64 Texas, 151. The horses were not in charge of the owner at the time of the injury, but were traveling at their own will, and notwithstanding they were hitched to the wagon the law applicable to killing stock by railroad trains would apply to the injury done them.

The injury to the wagon is governed by the law regulating liability for torts or actionable negligence in such cases, and the liability for the same would depend upon whether the company or its servants were negligent as alleged.   The following familiar principles apply to the question of contributory negligence:

If plaintiff was intoxicated and his intoxication was the occasion of the horses running away and lodging with the wagon on the track, and so by his own fault and negligence he contributed to the injury, the company would not be liable unless it is made to appear that its servants could have prevented the same by ordinary care.   If plaintiff's negligence or fault was the cause of the horses and wagon being in a place of danger, and defendant's servants in charge of the train saw it or became aware of it in time to have prevented the collision by ordinary care, it was their duty to do so, and if they negligently failed to do so the company would be liable; but if they did not see the danger in time to have prevented the injury by such care the company would not be liable.   H. & T. C. Ry. v. Smith, 52 Texas, 178; H. & T. C. Ry. v. Sympkins, 54 Texas, 615; H. & T. C. Ry. v. Richards, 59 Texas, 373; I. & G. N. Ry. v. Cocke, *supra*.

After the parties announced ready for trial, the clerk having the list of jurors already prepared handed it to defendant by direction of the court, when the attorney for defendant objected and demanded that the list be regularly drawn from the box, which demand the court refused, and compelled counsel to pass on the jury upon the list so furnished by the clerk. Defendant's attorney excepted to the ruling, and presented his bill of exceptions after the trial, which the court approved, with the qualification that he had refused the request because it came too late, because no reason was stated by counsel, nor did he show that he had or might suffer any injury from the action of the court, and stating further that if counsel had shown that he had been injured by the ruling the court would have granted a new trial.

The statute requires the clerk to draw the jury in regular form, one name out of the box at a time, recording the name of each juror as it is drawn on two lists until all the names are drawn from the box, one of which lists shall then be furnished to each party.   Challenges for cause are then heard and acted on, after which peremptory challenges are made by simply striking the name of any objectionable juror from the list. The place of a juror's name on the list, whether near the top or bottom of the list, is sometimes important, because after all the challenged names are stricken from the lists, the first twelve names left on them in the order in which they appear will constitute the panel to try the cause. Whatever advantage there may be in having the names of certain jurors near the top or bottom of the list the law prescribes shall be left to the

chance drawing of the clerk as he takes the names one by one from the box.

We think the court should have required the clerk to draw the jury after the parties announced themselves ready for trial in the regular way as provided by statute. The attorney was not bound to state his reasons for the demand, because the law allows his reasons in selecting and challenging peremptorily to remain private. A challenge for cause must be made known to the court; a peremptory challenge is a privilege the cause of which the parties may wish should not be known, and the court can not compel them to make it known at any stage of the proceedings or for any purpose.

We have sufficiently indicated our views of the principal questions of law likely to arise on another trial, and it will not be necessary to discuss each of the charges given and refused by the court. There was reversible error in the charge given by the court which we have pointed out, and on account of that error we conclude the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 11, 1889.