**NORTHERN TEXAS TRACTION CO. v. STONE et al. (No. 6553.)**

(Court of Civil Appeals of Texas. San Antonio. April 30, 1921. Rehearing Denied May 26, 1921.)

1. Damages ⬯113—Measure of damages for injury to mule stated.

Prima facie the measure of damages for injury to a mule by being run into by a street car would be the difference between its market value at the place of the accident before and after the injury, so that, while, if there was no market value at the city where the injury occurred, the owner would have a right to take the mule back to another town and there treat it and sell it for the best price there obtainable, and recover on the basis of deducting the market value where sold, less the amount of reasonable sums expended in such treatment, from the market value at the place of and before the injury, yet, if the owner received a cash offer for the mule at the place of injury at the time of the accident, his measure of damages would be limited to the difference between the market value of the mule before the accident and such offer, and the owner would take the risk of restoring the mule to usefulness; the theory of allowing recovery of the costs of treatment being to minimize, and not to enhance, the damages.

2. Street railroads ⬯118(5)—Charge applying Motor Vehicle Law to street car injuring animal held misleading.

A charge submitting the issue whether defendant's motorman, in passing and overtaking plaintiff's mule tied to the rear of a wagon, gave "such assistance to plaintiff as was reasonably demanded by the circumstances to obtain clearance and avoid the accident," followed by language that might lead the jury to believe that the street car should have steered around the mule, as an automobile would do, in observing the Motor Vehicle Law of 1917 (Acts 35th Leg. [1917] c. 207, § 16h [Vernon's Ann. Pen. Code Supp. 1918, art. 820k]), was misleading as applied to a vehicle with a fixed track.

3. Street railroads ⬯117(11)—Negligence in running against mule tied to wagon question for jury.

In an action for negligently running a street car against plaintiff's mule tied to the rear of a wagon, held on the evidence that the question of defendant's negligence in using no means to prevent the injury, or in running the car at such speed as to be unable to stop it, after discovering the mule's peril, should have been submitted to the jury.

Error from Tarrant County Court; W. P. Walker, Judge.

Action by F. G. Stone and others against the Northern Texas Traction Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

---

Capps, Cantey, Hanger & Short, of Fort Worth, for plaintiff in error.

Bryan, Stone & Wade and J. C. Hyer, all of Fort Worth, for defendants in error.

FLY, C. J. This is a suit for $229, damages to a mule alleged to have been inflicted by plaintiff in error negligently running a street car against the mule, which with three others was tied to the rear end of a wagon, and being led along the streets of Fort Worth. The cause was submitted to a jury on special issues, and on the answers thereto judgment was rendered in favor of defendants in error for $201.

The jury found that the street car was running at a greater rate of speed than 18 miles an hour, and that this fact was the proximate cause of the injury to the mule, and that the mule was of the market value of $220 in Fort Worth, just before the accident, and $100 in West, after it had been hurt, and treated for its injury. It was also found that Stone expended $10 for his board and lodging in Fort Worth in order to treat and care for the mule, that medicine for the mule cost $2.50, and there was a charge of $25 for caring for the mule after it was sent back to West, and $8.40 for freight on the mule back to West. It required 22 questions to elicit this highly interesting and instructive information about the manner in which the mule was hurt and the time spent and tender care lavished on the animal to nurse it back to health and efficiency. Not more than 6 questions would have been sufficient.

[1] If the mule was injured through the negligence of plaintiff in error, the measure of damages was the difference between its market value in Fort Worth before the injury and the market value thereafter. If, however, there was no market value for the mule in Fort Worth, as Stone testified, after it was injured and he took the mule back to West and by care and attention restored the animal to such an extent that he sold it for $100, and that was the reasonable value, then the measure of damages would be the difference between the market value of the mule in Fort Worth before it was hurt and the reasonable value of the mule after it had been restored to partial usefulness, less the necessary and reasonable amounts expended in such restoration. While it is true that the measure of damages would not be the difference in market value of the mule before injured in Fort Worth and the market value after it was restored to some efficiency at West, still such rule would not injure plaintiff in error, because the evidence showed that the mule was worth more in West than it would have brought in Fort Worth. If defendant in error was acting properly in trying to minimize the damages by caring for the mule, he should be reimbursed for all reasonable sums expended in such care and attention, and that can be done by deducting those sums from the value of the mule after such care and attention. Railway v. Keith, 74 Tex. 287, 11 S. W. 1117; Powell v. Hill, 152 S. W. 1125.

The evidence, however, fails to show that defendant in error was acting reasonably; for, while he swears the mule was not worth a dime in Fort Worth after he was hurt, the uncontroverted evidence shows that defendant in error was offered $35 in cash for the injured mule in Fort Worth at the time of the accident, but he refused it and chose to take the risk of restoring it to its usefulness. In treating and taking care of the mule he expended more than four-fifths of his value after being restored and left only $19 to be credited to plaintiff in error on the original value. Defendant in error should pay for his mistake in endeavoring to cure the mule, and plaintiff in error, if liable at all, should have the benefit of the offer of $35, which would have reduced the damages to $185 instead of $201.

The complaint as to the argument of counsel need not be considered as it is not likely that it will be repeated in another trial.

[2] The nineteenth issue submitted by the court is as follows:

"Did the motorman of the defendant in passing and overtaking said mule and wagon of plaintiff give such assistance to plaintiff as was reasonably demanded by the circumstances to obtain clearance and avoid the accident?"

This charge was promptly objected to and it is not apparent upon what hypothesis it was based. How the motorman, driving a street car, could give assistance to the owner of the lively young mule tied with three others to the rear end of a wagon is certainly not disclosed by any evidence and is not based on any law, statute, or otherwise. If the court meant that the motorman should have stopped his car, if he saw the mule on the track, until it could be persuaded or forced to walk in a safer place, he ought to have said so. That part of the charge had no reference to the facts and could have no other tendency except to mislead the jury. It is followed by language that might lead the jury to believe that the street car ought to have steered around this unnatural animal "without pride of ancestry or hope of posterity," as an automobile would do; for that is what is meant by giving "such assistance * * * as the circumstances shall reasonably demand in order to obtain clearance and avoid accident." So the language is used in section 16 (h) of the Motor Vehicle Law of 1917 (Gen. Laws 35th Leg. p. 478 [Vernon's Ann. Pen. Code Supp. 1918, art. 820k]). Evidently the court copied the language of that law, and endeavored to apply it to a vehicle with a fixed track, which would render it an arduous, if not impossible, task to give clearance to anything.

[3] Of course, the jury answered that no

assistance was rendered defendant in error, in giving clearance to the mule. The man with the mules was the individual to give clearance to the street car, for he shows that his wagon was not as close to the curb as it might have been, and he should have moved over and dragged the mules with him if necessary. It is true that he stated that he was as close to the curb as he could get, but on cross-examination he showed that the wheels nearest the track were seven feet from the curb, and that the distance from wheel to wheel on either end was six feet. He had at least a foot of "clearance," which he should have utilized on the spot. He might thus have saved the hock of the mule which he says was hit by the front step. It must have been a mere grazing of the hock or the step would have caught the leg, have broken it, and have thrown the mule and possibly have derailed the car. Defendant in error testified that he was leading the mules, and they must either have had a long play on the rope or they must have been following the wagon, and yet defendant in error swore that the front step hit the hind leg of the mule and threw it against the wagon, and it appears that it was the side of the wagon. No witness corroborated the evidence of defendant in error that the mule was struck by the front step of the car, but he was sharply contradicted by his own witness. Another witness stated that the mule was struck by the rear step.

There was evidence tending to show that the mule was three or four feet from the track when the front of the car passed, and, as stated by one of the witnesses, the mules "were kind of gay." The evidence presents a picture of a countryman from the McLennan county village of West, coming into the stirring modern city of Fort Worth, with two mules drawing his wagon and four untutored country mules attached by ropes to the rear end of his wagon. To these denizens of the field and meadow, honking automobiles, clanging street cars, and the turmoil of modern commercial life were not only novel, but alarming, as they steered their perilous journey through the city, with their nerves keyed to a high pitch, until at last they reached a modern convenience called an aqueduct, but unknown to them, and while wending their perilous way through this labyrinthine passage, before they were aware of its approach, a huge vehicle flits by, as on the wings of the wind, and what more natural than that the nearest mule to this unknown vehicle should seek to instantly defend itself against what was deemed to be an attack upon its personal liberty, by using the effective weapons placed in its possession by nature? The jury found that the gay and festive mule did not kick the car, which they probably might do under the testimony, although no one acquainted with the total depravity and moral obliquity of the average mule would hesitate to credit the statement that the mule now under investigation administered a swift kick to the car as it was passing its ever-ready heels. There was direct testimony to this effect.

Under the facts the court should have submitted the question of the negligence of plaintiff in error, either in discovering the peril of the mule and using no means to prevent the injury, or in running the car at such a rate of speed as to have been unable by the use of all reasonable means to stop the car after discovering the peril of the mule. Only on the last hypothesis could the rate of speed have been the proximate cause of the injury.

The judgment will be reversed, and the cause remanded.