### DAVIS, Federal Agent, v. COCHRAN.
### (No. 7370.)

(Court of Civil Appeals of Texas. San Antonio. May 27, 1925. Rehearing Denied June 20, 1925.)

**1. Evidence ⬀574—Reconciliation of conflicting testimony for jury.**

Reconciliation of conflicting testimony of two experts belongs to jury, who may believe the one and disregard the other.

**2. Trial ⬀350(6)—Evidence held to raise issue whether hogs were free from disease when delivered to carrier.**

Evidence *held* sufficient to warrant submission of issue whether hogs were free from disease when delivered to defendant for shipment, and whether disease had its incipiency after such delivery.

**3. Trial ⬀350(6)—Evidence held to raise issue whether diseased condition of hogs was proximately caused by negligent delay of carrier.**

Evidence *held* sufficient to raise issue whether arrival of hogs at their destination in diseased condition was proximately caused by negligent delay of carrier.

**4. Evidence ⬀75—Carrier's failure to explain or excuse unreasonable delay in shipping hogs creates presumption of negligence.**

Defendant carrier's failure to produce records, or offer any explanation or excuse for unreasonable delay in shipping hogs in question, facts being solely within its knowledge, *held* to create presumption of negligence.

**5. Trial ⬀215—Requested general charge in case submitted on special issues held properly refused.**

Where action was submitted on special issues, defendant's requested general charge was properly refused, as it would be improper to submit general charge in connection with special issues, particularly where issues embraced in requested charge were covered by special issues submitted.

**6. Trial ☞194(1)—Peremptory instruction, commenting on weight of testimony, properly refused.**

Peremptory instruction, commenting on weight of testimony, was properly refused.

**7. Evidence ☞537—Witness held qualified to testify as expert as to diseased condition of hogs.**

Witness, having 14 years' experience in handling and selling hogs, and looking after and feeding them, and taking care of and treating sick hogs, *held* competent to testify as an expert as to diseased condition of hogs in question on arriving at their destination.

**8. Evidence ☞546—Qualification of expert within trial court's discretion.**

Qualification of an expert is largely within discretion of trial court.

**9. Appeal and error ☞1062(1)—Error, if any, in submission of issue, held rendered harmless by answer thereto.**

Error, if any, in submitting to jury issue as to what percentage of loss in value of shipment of hogs in question was proximately caused by failure of carrier to transport them in usual and ordinary time, *held* rendered harmless, in view of jury's answer that entire loss was due to negligence of defendant.

**10. Carriers ☞215(1)—Under jury's finding, carrier held liable for loss in value on hogs.**

Jury having found that hogs shipped were free from disease when delivered to carrier, that negligent delay proximately caused them to become diseased, that all of loss in value was proximately caused by such delay, and that hogs were sold as soon as practicable, *held*, that carrier was liable for loss in value on hogs.

**11. Carriers ☞229(2)—Amount for which hogs sold some time after their arrival held not to have been considered in determining measure of damages.**

Contention that carrier is not bound by amount for which hogs were sold some time after their arrival at destination *held* without merit, where judgment was predicated on difference between market value of hogs, if they had been shipped without negligence, and their intrinsic value at time of their arrival.

**12. Trial ☞350(6)—Evidence held to warrant submission of issue as to number of diseased hogs on arriving at destination.**

Evidence *held* to justify submission of special issue as to number of diseased hogs in shipment on arrival at their destination.

**13. Appeal and error ☞1062(1)—Submission of issue, if error, held harmless, where on immaterial issue, and in view of jury's finding.**

Submission of issue as to number of diseased hogs in shipment at destination, if error, was on a wholly immaterial issue, and harmless, especially in view of jury's finding that all loss in value of hogs was proximately caused by carrier's negligent delay.

**14. Appeal and error ☞1062(1)—Submission of issue, if error, held harmless, where answer unnecessary, in view of finding in response to other issues.**

Submission of issue as to how many hogs, if any, were diseased when delivered to carrier for shipment, if error, *held* harmless, where jury found, in response to preceding issue, that none of hogs were diseased when delivered to carrier.

**15. Carriers ☞229(2)—Measure of damages for cattle injured during shipment, when no market value, stated.**

When there is no market value for injured animals, measure of damages is difference between their market value, if transported without negligence, and their real or intrinsic value in condition in which they were delivered.

**16. Limitation of actions ☞127(3)—Cause of action for veterinary charges in suit for damages for delay in shipment held not new cause of action.**

Cause of action for veterinary charges, by shipper against carrier, is an item of expense growing out of carrier's negligent delay in shipping hogs, and is not a new cause of action, and hence petition arrested running of statute of limitations.

**17. Appeal and error ☞1050(1)—Admission of testimony, if error, held harmless, where cumulative of similar testimony not objected to.**

Testimony of expert witness, if error, because witness disqualified, *held* harmless, where it was cumulative of testimony given by another witness, whose qualification was not questioned.

*On Motion for Rehearing.*

**18. Trial ☞340(5)—Inclusion of interest in judgment held error, where no finding of interest by jury.**

It was error for trial court to include in judgment interest on amount of damages found by jury, where there was no finding of such interest by jury.

**19. Appeal and error ☞221, 758(1)—Inclusion of interest in judgment, without finding thereon by jury, held fundamental error.**

Action of trial court in including interest in judgment, there being no finding of interest by jury, *held* fundamental error, of which court will take cognizance, though not prosecuted in trial court, nor in brief in appellate court.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by T. P. Cochran against James C. Davis, Federal Agent, for Gulf, Colorado & Santa Fé Railroad. Judgment for plaintiff, and defendant appeals. Reformed, and affirmed, as reformed, on rehearing.

Terry, Cavin & Mills, of Galveston, and Lee, Lomax & Wren, of Fort Worth, for appellant.

Slay, Simon & Smith and Hugh B. Smith, all of Fort Worth, for appellee.

COBBS, J. Appellee filed this suit in the Sixty-Seventh district court of Tarrant county against appellant, to recover $2,000 damages, on account of delay and improper handling accorded a shipment of hogs moving from Fort Worth, Tex., to Wichita, Kan., about January 25, 1919. Appellee alleged that, on account of unreasonable delay and improper handling of said shipment 43 of the hogs died, to his damage in the sum of $480.89, and that there was an excess shrinkage on said 43 head which died of 2,552 pounds, to his damage in the sum of $357.28, and that the difference in the market value of the remaining hogs at the time they were sold, and what their market value would have been if they had been safely transported within a reasonable length of time, was $183.73. Appellee also sued for excess feed charges en route, in the sum of $18, and excess feed charges after arriving at destination, in the sum of $112.50, and veterinary charges incurred at destination on account of the condition of the hogs, in the sum of $447.59. He alleged he was entitled to recover the difference between the reasonable market price of the hogs at the time of sale and their reasonable market value had they been safely transported with dispatch, together with other charges and expenses necessarily incurred in the proper treatment and care of said hogs. It is alleged that, if the shipment had been safely transported with reasonable dispatch, the hogs would have been of the reasonable market value of $4,020 at their destination, and that, if said hogs had any actual value at the time of their arrival at destination, same did not exceed the sum of $2,500.

Appellant answered, pleading that, if any of the hogs died after arrival at Wichita, or there was any depreciation of the value of such hogs, same was caused by such animals being afflicted with some contagious or infectious disease, and that the hogs in question were held in the stockyards and hog pens at North Fort Worth, Tex.; before shipment, and were there exposed to infectious and contagious diseases peculiar to such animals, and that such disease was contracted by the hogs before they were loaded on the railroad cars at North Fort Worth; and further that, if such disease was contracted by the animals as a result of being exposed to same while in transit, the exposure of such hogs to such disease was not the result of any negligence or want of care on the part of appellant, but was the result of the negligence and want of care on the part of appellee in not making a request that the hogs in question be loaded into clean and disinfected railroad cars; appellant alleging in this connection that such shipment was billed by the appellee as being hogs for immediate slaughter, and that under such designation, under the rules and regulations in force and effect at the time, issued and promulgated by the Secretary of Agriculture of the United States, there was no obligation on the part of appellant to load the hogs in clean and disinfected cars, and that appellee well understood that, when the hogs were so billed, the shipment would not be loaded into clean and disinfected cars, unless a special request was made therefor, and that an extra charge would have been made for such loading; appellant further alleging that in so billing said hogs, with knowledge that same would be loaded into cars which had not been cleaned and disinfected, the plaintiff assumed the risk of such hogs becoming afflicted with such contagious and infectious disease while in transit.

In a first supplemental petition appellee alleged that, if the loss and damage was due to any of the matters set up in appellant's answer, such loss and damage was increased, aggravated, and proximately contributed to "by the unusual, unreasonable, and negligent delay of the defendants and their agents, servants, and employees, and the connecting carriers of said shipment, and the negligence on the part of the defendants, their agents, servants, employees, and connecting carriers of said hogs in otherwise transporting said animals."

The case was submitted to the jury on special issues, and on the answers of the jury to the special issues submitted the court rendered judgment in favor of the plaintiff and against the defendant in the sum of $1,693.52. The issues involved in this case are not complex, but simple. The cause was correctly submitted to the jury, upon 26 issues that covered every possible phase of the case, together with all necessary explanations of the law covering the same. Every issue was found by the jury in favor of appellee, and thereupon the court entered judgment. This judgment will have to be affirmed, unless it is made to appear by proper assignment that some error of law was committed by the trial court.

The first contention of appellant is that the undisputed testimony shows that at the time the hogs reached destination they were found to be afflicted with a disease known as swine plague, and the undisputed testimony shows, by an expert veterinarian who made the diagnosis, that the hogs had been so infected before being loaded on cars at Fort Worth, so the appellee, therefore, was not entitled to recover damages resulting from such diseased condition of his hogs.

This is the first of 15 propositions upon which appellant predicates his appeal, all in effect presenting the same question in a conglomerated mass to be picked out separately, which we will try to do by a general discussion touching upon each. Dr. Ross Moorman is the veterinarian who testified as an expert. He examined 308 live animals on January 29, 1919, and the same number on February 3, 1919, and he testified that he found the

hogs diseased with swine plague. He goes into minute detail, giving a technical description of the disease, and stated that in his opinion such disease could not have resulted from any delay sustained during the shipment, or from any rough handling accorded to such shipment while in transit. It will be borne in mind that he never saw these hogs until they reached their destination. In his opinion their primary trouble was swine plague infection, which was undoubtedly acquired in passing through the Fort Worth stockyards without any prophylaxis, and that the disease could not have had its beginning or incipiency in transit and reached the state of development that he found after the time they were shipped from Fort Worth and the time he examined the hogs.

Appellant predicates the error upon the testimony of the expert witness Ross Moorman, the veterinarian, who inspected and examined the hogs at the point of destination. He stated that about 50 per cent. of the hogs appeared normal. S. P. Buckingham testified that he, had had 14 years' experience in dealing with hogs, and was the salesman who handled the hogs at Wichita, Kan., and that the "hogs were more or less infected, and had the entire shipment driven back to the stockyards holding pens, where infected hogs are held for inspection and treatment; that he was having a good many orders, and went to the pens, and the first pen contained 31 head of stock pigs, sick with the thumps, and knew he could not sell them, and, looking through the other pens, he could see that they were in the same condition; that 43 hogs died subsequent to their arrival at Wichita, Kan.

There were only two expert veterinary surgeons who testified, to wit, Dr. Ross Moorman, who only saw the hogs at destination, never before, and treated them. Theoretically and by one process of reasoning, one hypothesis after another, he reached the conclusion that the hogs had "swine plague" before being shipped. The other expert in the employ of appellant was Dr. Crabb, who also never saw the hogs prior to their shipment. Each of these two doctors gave their opinion as to the cause of the sickness and death of the swine, based upon the facts presented to them and observed by them subsequent to the shipment. By expert testimony the writer is often reminded of what the late beloved Judge George Goldthwaite of the Houston bar said to an expert witness whom the judge stood aside without a single question. This disappointed the young doctor, who thought the old judge feared to examine him, and he had the temerity to inquire of the judge the reason for such unexpected conduct, and the judge replied:

"Young man, my observation has been that an expert generally swears for the one that brings him."

Dr. Crabb attributed the disease to a particular kind of pneumonia that attacked the hogs, and stated that the contagious pneumonia which takes place from five to eight days after exposure to develop cannot be cured by the injection of serum. It must be noticed that only 43 of the entire shipment of 319 hogs died. There is testimony of the inspector that shows, from the record which it was his duty to make, the condition of the hogs. The inspector testified as follows:

"The record about which I have testified is a record that is made for our benefit, to testify for the railroads."

And further that:

"It shows pigs fair, and that represents the condition of the hogs, in fair condition. The cars had mud in them, and we put the hay in the cars to keep the hogs out of the mud. If there was anything wrong with the hogs, if any of them were crippled and diseased and that was brought to my notice when I made the inspection, I would mark it down in this book. If I had found any of them that were sick or in bad condition, I would have made a record of it in this particular book. This book contains nothing to show that there was anything wrong with them, so far as this entry goes. I am still inspector out there, and still doing the same kind of work."

He further testified that the hogs were loaded at 3 a. m. January 25, 1919, and the original record was thereupon introduced. There were other witnesses, who showed that the hogs were not sick when shipped.

[1] We do not see that it would be profitable to set out and discuss the scientific and technical reasoning and statements of these two learned experts, who differ so widely. The reconciling of such testimony belongs to the jury, who may believe the one and disregard the other. In the case of Galveston, etc., R. Co. v. Harris, 48 Tex. Civ. App. 434, 107 S. W. 108, Chief Justice Fly, writing the opinion for this court, used the following language:

"Appellee swore positively to impotency having been produced by the injuries he received by his fall from the car, and we cannot arbitrarily hold that the theorizing of two medical gentlemen as to what might or might not happen from an injury should be credited by the jury, in preference to the positive testimony of a witness, even though he be the plaintiff in the case."

The proof shows that the stockyards were no dirtier than any other stockyards, that the disease complained of was not existing there, and that the hogs were no more exposed than other hogs. There was testimony that the hogs might have been infected during a transit of long delay, which in the winter time might cause such infection as that disclosed by the testimony. Ordinarily the hogs could stand a shipment of 48 hours without

being diseased, more especially from pneumonia. Hogs delayed in transit in the winter time as long as 80 hours, as these were, are more apt to develop disease. The shipment took something like 80 hours for the 309 hogs which first arrived, and something like 5 days for the remaining 9 hogs. The main bunch of 309 hogs were transported at the rate of a little over 4½ miles per hour, and were kept in transit twice what the time-card called for. The tendency of such delay, according to the testimony of experienced hog men, whose qualifications are not attacked, is that such delay will cause pneumonia to break out on the hogs when they are being shipped in the winter time.

[2] The evidence was ample to raise the issue whether or not the hogs were free from disease when delivered to appellant for shipment, and as to whether the disease had its incipiency after such delivery, and there was no error in the court's ruling in submitting the issue. Appellant's propositions Nos. 1, 2, 3, 4, 5, 6, and 9 are overruled.

[3] The evidence is sufficient to raise the issue as to whether the arrival of the hogs at Wichita, Kan., in a diseased condition, was proximately caused by the negligent delay of appellant. The jury having answered this issue in the affirmative, it will not be disturbed. So appellant's propositions 2, 4, 5, and 9 are overruled.

The live stock agent of appellant D. S. Culwell was subpœnaed to bring the waybills with him. Although the claim had been investigated by this live stock agent, none of the records or papers showing what happened to these hogs in transit was produced. No attempt whatever was made to explain this most unusual and unreasonable delay, requiring more than 3 days to ship the hogs 373 miles, the train making an average of something like 4½ miles per hour, and 9 of the hogs having been lost out of the shipment, and not arriving at destination for more than 5 days after delivery. The 36-hour release was incorporated in the shipping agreement, so that the hogs did not have to be unloaded at the end of 28 hours, as required by the federal law, in the absence of such waiver. Although no caretaker accompanied the shipment, and the facts were solely and exclusively within the knowledge of the defendant and its agents, and although their claim agent and live stock agent, D. S. Culwell, had made a careful investigation and examined the records, none of these records were produced, nor was there offered a single word of explanation as to this delay, nor was any attempt made to excuse it.

[4] These circumstances alone would create a presumption of negligence. The failure to disclose evidence, or to explain, when explanation or disclosure would negative the inference of negligence, failure gives rise to a presumption of negligence. Jones on Evidence (3d Ed.) par. 19.

[5] We overrule appellant's third proposition. Appellant requested the trial court to give to the jury the general charges requested by the defendant, to the effect that the evidence showed that the hogs were infected with disease when delivered to the defendant, and that the defendant was not liable for plaintiff's damages resulting therefrom, for the further reason that this case was submitted on special issues, and it is improper to submit a general charge in connection with special issues, and particularly is this so when the issues embraced in the requested charge were covered by the special issues submitted, as was done in this case.

The court submitted to the jury special issue No. 5, embracing the issue as to whether or not all of the hogs contained in the shipment were free from disease when delivered to the defendant, and the jury found that such hogs were free from disease. The court also gave to the jury defendant's requested special issue No. 1, in answer to which the jury found that the hogs were not infected with the disease with which they were afflicted at destination.

In other special issues, the question of the proximate cause was duly submitted to the jury. The other items of feed charges, shrinkage, and veterinary fees were also found to result proximately from the delay.

[6] These issues had already been covered by issues given by the court to the jury, some requested by appellant, as well as on the question of the ultimate issue of fact. The court was not in error in refusing a peremptory instruction commenting on the weight of testimony. Of course, the appellant had the right to have submitted to the jury an issue as to whether or not the hogs were diseased, and such issues were given to the jury. As supporting the contention that it is improper to charge a jury generally on the law, where a case is submitted on special issues, see Connellee v. Nees (Tex. Com. App.) 266 S. W. 502; Calvin v. Neel (Tex. Civ. App.) 191 S. W. 791; Fort Worth & Denver City R. Co. v. Morrow (Tex. Civ. App.) 255 S. W. 674; Humble Oil & Refining Co. v. Strauss (Tex. Civ. App.) 243 S. W. 528.

[7, 8] We overrule the seventh and eighth propositions. The witness S. P. Buckingham, from his 14 long years of experience in handling and selling fat hogs to packers, buying and selling hogs on orders, shipping hogs to Illinois, Nebraska, Missouri, Iowa, and Oklahoma, besides Kansas, and looking after feeding and watering and taking care of sick hogs, treating sick hogs, and having dead hogs moved away, and selling well hogs whenever he could, he was competent to testify as an expert, and besides he saw and examined these particular hogs on their arrival. He was part owner of the Curtis-Buckingham Live Stock Commission Company, and in January and February, 1919, was employed as hog salesman of Witherspoon-McMullen

Live Stock Commission Company. The qualification of an expert is a matter largely within the descretion of the trial court.

[9] Appellant complains that the court erred in submitting to the jury the issue as to what portion or per cent. of the loss in value of the hogs was proximately caused by the failure, if any, of defendant to transport the shipment in the usual and ordinary time, which was rendered harmless by the answer of the jury, "all or 100 per cent.," and by the further finding that all of the hogs were free from disease when delivered to appellant for shipment. The jury found as a fact that none of the hogs were diseased when delivered to appellant for shipment, and that the negligent delay of appellant proximately caused the arrival of the hogs in a diseased condition, and that the entire loss in value of the hogs was due to the negligence of the appellant.

Such an inquiry would not admit of an exact answer anyway. If the hogs had been all right, they could have been placed on the market the day of their arrival, but could not be in their diseased condition, for then they had no market value, and they were all more or less infected. There was no decline in the market, but loss was due to their damaged condition. H. & T. C. R. Co. v. Derden (Tex. Civ. App.) 194 S. W. 489.

[10] We also overruled appellant's tenth proposition. The jury having found that the hogs were free from disease when delivered to appellant, and that the negligent delay proximately caused the hogs to become diseased, and that all of the loss in value was proximately caused by such delay, and that the hogs were sold as soon as practicable, the appellant is liable for the loss in value on the hogs.

[11] Appellant's complaint, set forth in his tenth proposition, to the effect that appellant should not be bound by the amount for which the hogs were sold some time after their arrival at destination, is not well founded, because the judgment of the court was predicated upon the difference between the market value of the hogs if they had been shipped without negligence and the intrinsic value of the hogs at the time of their arrival, and not at any subsequent time. Two distinct measures of damages were submitted to the jury upon two theories. In rendering judgment, the court adopted as the measure of damages the difference between the reasonable market value of the hogs in the condition in which they should have arrived, and the intrinsic value of the hogs in the weight and condition in which they actually arrived.

[12] Appellant's eleventh proposition is overruled. There was sufficient evidence justifying the submission of the special issue to the jury, in which they were asked to find what was the number of diseased hogs in the shipment at the destination. Taking the testimony of the veterinary Dr. Ross Moorman, appellant's witness, the jury could have found that 50 per cent., or 159 hogs were diseased, or they could have found that only 43 were diseased, under the testimony of the other veterinary, Dr. Crabb, and that the disease could not be cured, and that 43 were all that were not cured.

[13] This was harmless and immaterial, since the jury ascertained all the loss and damage was due to appellant's negligence, and it made no difference what was the particular number of hogs diseased. In such a case, as held in Railroad Co. v. Derden, supra, the exact extent or amount of damages need not be capable of definite computation.

Special issue No. 8, which was the issue as to the number of hogs which were diseased upon arrival at Wichita, was upon a wholly immaterial issue, and the error, if any there was, was harmless, especially because the jury found that all of the items of plaintiff's damage and all of the loss in value to the hogs was proximately caused by the negligent delay of appellant. The damages recovered were proximately caused by the negligent delay of appellant, so the jury found; therefore it made no difference whether any or all the hogs were infected with the disease. It was the disease that rendered the hogs unsalable, and made it necessary to treat and care for the hogs, and feed them, and administer to them medical treatment.

[14] We overrule appellant's twelfth proposition, because there was ample evidence under which the jury could have based an answer to special issue No. 6 (if they had believed appellant's witnesses), embracing the issue of how many hogs, if any, were diseased when delivered to appellant for shipment; but in any event the submission of said issue was harmless, since the jury found in response to other issues that none of the hogs were diseased when delivered to appellant for shipment, thus rendering it unnecessary to answer this issue under instructions of the court.

Special issue No. 5 embraced the issue as to whether or not all of the hogs were free from disease when delivered to the defendant for shipment, and the jury found that all of the hogs were free from disease. The court then instructed the jury that, if they had answered said issue to the effect that all of the hogs were not free from disease, then, but not otherwise, they should answer the question, being special issue No. 6, as to how many hogs, if any, were diseased, and, the jury having answered special issue No. 5 as pointed out, no answer was made to special issue No. 6. The error was entirely harmless, if any there was.

Under Dr. Crabb's testimony, to the effect that a hog infected with the particular variety of pneumonia which he claimed the hogs were diseased with—under his testimony that hogs suffering from such disease could not be cured, and under the testimony of the wit-

ness Buckingham that all of the hogs were cured except 43, the jury could have answered this question; or under the testimony of Dr. Ross Moorman, that he performed a post mortem on only 1 hog, they might have found that only 1 hog was diseased, there was ample testimony that none of the hogs were diseased, and the jury so found.

[15] We overrule appellant's thirteenth proposition. It was shown by the evidence that the hogs had no market value in the condition they were in when they reached their destination, and hence were unsalable. They were sold as soon as practicable. Where there is no market value for injured animals, the measure of damages is the difference between the market value of the hogs, if transported without negligence, and their real or intrinsic value in the condition in which they were delivered. G., C. & S. F. R. Co. v. Helms Bros. (Tex. Civ. App.) 210 S. W. 853; Id. (Tex. Civ. App.) 211 S. W. 597; M., K. & T. R. Co. v. Chittim (Tex. Civ. App.) 40 S. W. 23. We do not think any material error was committed by the court, as contended for in appellant's thirteenth proposition, in submitting the intrinsic value of the hogs.

The court submitted an additional measure of damages by special issue; that is, the items of expense for extra feed charges, veterinary fees, value of dead hogs, shrinkage, and loss in value of live hogs after treatment. It was necessary, and agreed to that the veterinary services were necessary, and the fee was reasonable. No attack is made upon the findings of the jury that the hogs were sold as soon as practicable. We think in this case the rule adopted by the court for the measure of damages was the proper one. G., C. & S. F. R. Co. v. Godair, 3 Tex. Civ. App. 514, 22 S. W. 777; G., H. & S. A. R. Co. v. Tuckett (Tex. Civ. App.) 25 S. W. 150; Fort Worth & Denver City R. Co. v. Jordan (Tex. Civ. App.) 155 S. W. 676; St. Louis & S. W. R. Co. v. Foster (Tex. Civ. App.) 89 S. W. 451; Mecom v. Vinton (Tex. Civ. App.) 191 S. W. 763; G., C. & S. F. R. Co. v. Keith, 74 Tex. 287, 11 S. W. 1117; I. & G. N. R. Co. v. Cocke, 64 Tex. 151.

[16] We overrule appellant's fourteenth proposition. The petition arrested the running of the statute of limitation against the cause of action for veterinary charges, it being an item of expense growing out of the same negligence with respect to the shipment of hogs, and in no wise a new cause of action, but a necessary expense growing out of the same shipment, resulting from appellant's negligence alleged in the petition. Coulter v. G., C. & S. F. R. Co. (Tex. Civ. App.) 248 S. W. 788. Besides, the cause of action is based upon a written contract.

[17] We overrule appellant's fifteenth proposition. The witness T. P. Cochran was shown to qualify as an expert witness familiar with the effect of keeping hogs in transit, and the length of time hogs would stand up in shipment in the winter time without pneumonia breaking out. It is not necessary to quote the testimony that rendered it sufficient; besides, his qualification to testify was a matter within the discretion of the trial court, not shown to have been abused. This testimony was harmless anyway if he was disqualified to testify, which he was not, because the testimony was cumulative of other evidence given by the witness Tom Frazier to the same effect, and whose qualification was not questioned by appellant at all, because he was thoroughly qualified.

We have carefully considered all of appellant's numerous assignments and propositions, and, finding no error assigned, they are all overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

[18] In appellant's motion for a rehearing, for the first time, our attention has been called to the fact that interest for $377.61 was erroneously entered in the judgment. It was error for the trial court to include in the judgment interest on the amount of damages found by the jury from the date damages accrued, when there was no finding of such interest by the jury.

[19] This contention was not prosecuted in the trial court, nor in the brief in this court; but it constituted fundamental error, and this motion will be granted as to that item, but overruled as to the balance.

The judgment will be reversed, so as not to allow the $377.61 to be included in the judgment, and so reformed as to render judgment here in favor of appellee for the sum of $1,315.91, with 6 per cent. interest from November, 1923, the date of judgment, together with all costs against appellant, and for which amount of $1,315.91 the judgment is affirmed.