## GLAZIER v. ROBERTS et al.

### No. 13564.

Court of Civil Appeals of Texas. Fort Worth.

June 18, 1937.

Rehearing Denied Sept. 10, 1937.

Slay & Simon, of Fort Worth, for appellant.

McGown & McGown, B. E. Godfrey, and John M. Scott, Jr., all of Fort Worth, for appellee W. E. Roberts.

Marvin B. Simpson and Harris Brewster, both of Fort Worth, for appellee Mrs. Corinne Fickas.

DUNKLIN, Chief Justice.

On May 28, 1935, Weldon Roberts, after alighting from a street car in the city of Fort Worth at a public street crossing and while going to the sidewalk, was run over and killed by a truck driven by one Kelly Wilson and owned by Joseph Glazier, doing business under the trade name of Uncle Jo Bottling Company. At the time of his death Weldon Roberts was 18 years of age.

This suit was instituted on July 18, 1935, by W. E. Roberts, as the father of Weldon Roberts, against Joseph Glazier, doing business under the trade-name of Uncle Jo Bottling Company, and Kelly Wilson and W. A. Wilson, to recover the pecuniary benefits he alleged he would have received from the earnings of Weldon Roberts during his minority and after he reached the age of majority but for his death.

It was alleged that the death of Weldon Roberts was caused by the negligence of Kelly Wilson. It was further alleged that the truck driven by Kelly Wilson was owned by defendant Glazier and that Kelly Wilson was his employee, engaged to drive the truck, and at the time of the accident it was

being driven by him in the prosecution of business for Glazier.

In the alternative it was alleged that, if Glazier did not own the truck, it was owned by defendant W. A. Wilson, who was employed by Glazier to distribute his products in the city of Fort Worth at such time and in such manner as Glazier might direct, and Kelly Wilson was therefore working for and in the employment of both W. A. Wilson and Glazier and under the instruction, control, and direction of both, and therefore all three of the defendants were jointly and severally liable for the accident in question.

Plaintiff alleged that his son had resided with him all his lifetime, had periodically contributed to plaintiff's support and maintenance, but had not lived with nor contributed to the support and maintenance of his mother, Mrs. Corinne Fickas, who did not sustain any pecuniary losses by virtue of his death, and therefore plaintiff was the only person entitled to recover the damages sought for the death of Weldon Roberts.

In the alternative, plaintiff alleged that, if he be mistaken in his claim that he was entitled to the whole of the recovery sought, then he prayed that he be permitted to bring this action in his name only but for himself and Mrs. Corinne Fickas.

Plaintiff further alleged that on May 22, 1924, he procured a divorce from the mother of Weldon Roberts in the district court of Murray county, state of Oklahoma, in which decree of divorce the care and custody of Weldon Roberts was awarded to Mrs. J. A. Roberts, his grandmother and plaintiff's mother, but, notwithstanding that, Weldon Roberts, during his lifetime, resided with the plaintiff, who maintained a home for him and administered to his needs and welfare.

It was further alleged that Mrs. J. A. Roberts has assigned to plaintiff all her right, title, and interest of any character which she might have in the recovery sought by virtue of the decree of the court referred to.

Defendant Joseph Glazier filed a plea in abatement to plaintiff's suit, on the ground that Mrs. Corinne Fickas, the mother of Weldon Roberts, was a necessary and indispensable party plaintiff to the suit and that the failure to join her as a party had not been cured by plaintiff's alternative plea noted.

Without waiving that plea in abatement, defendant Joseph Glazier filed an answer, embodying a general demurrer and a general denial to plaintiff's suit. Defendants Kelly Wilson and W. A. Wilson also answered by a general demurrer and a general denial.

Thereafter Mrs. Corinne Fickas filed her plea of intervention, adopting plaintiff's allegations as to the death of Weldon Roberts and the proximate cause thereof; further alleging that she alone was entitled to compensation by reason of his death and that plaintiff W. E. Roberts was not entitled to any part thereof.

The pleadings of plaintiff and the intervener abounded in charges and counter charges, each against the other, of lack of filial devotion to the deceased; of neglect to properly care for him and cruel treatment of him.

The plea in abatement by defendant Glazier was overruled. The case was then tried to a jury, who returned findings in answer to numerous special issues. The verdict of the jury included, among other things, a finding that Kelly Wilson, the driver of the truck, was guilty of negligence as alleged in plaintiff's petition, which was the proximate cause of the injury and death of Weldon Roberts; that the deceased was not guilty of the contributory negligence pleaded by the defendant Glazier. Those findings had sufficient support in the evidence and are not challenged here.

There were further findings that the truck was not equipped with adequate brakes and in good working order; that defendant Glazier owned the same and knew by the exercise of reasonable diligence, or should have known, of that defect, and that in using the truck in that condition Glazier was guilty of negligence, which was also a proximate cause of the accident; further that at the time of the accident Kelly Wilson was operating the truck in the furtherance of the business of Joseph Glazier, doing business under the name of Uncle Jo Bottling Company, as his employee and with the express consent and also the implied consent of the latter. By further findings the jury awarded plaintiff and Mrs. Corinne Fickas, intervener, each the sum of $450 for loss of earnings of Weldon Roberts from the 28th day of May, 1935, the day of his death, until he would have reached the age of 21 years. The jury also awarded plaintiff W. E. Roberts, for loss of contributions of mon-

ey or property, or labor or services, which he had reasonable expectation of receiving from Weldon Roberts after he would have reached the age of 21 years if he had lived that long, $3,675; and to Mrs. Corinne Fickas for like benefits which she had reasonable expectation of receiving, under the same circumstances, the sum of $3,050. The total amount of damages thus allowed was $7,625.

There was a further finding that plaintiff had incurred funeral expenses in the burial of Weldon Roberts of $575. Judgment was rendered in favor of plaintiff W. E. Roberts against the defendant Glazier in the principal sum of $4,700, that being the aggregate of damages allowed to him by the jury plus the amount incurred for funeral expenses; also in favor of Mrs. Corinne Fickas in the sum of $3,500, being the aggregate of two items of damages found in her favor by the jury. The amounts allowed to plaintiff and the intervener aggregated $8,200. Judgment was also rendered denying to plaintiff any recovery against the defendants W. A. Wilson and Kelly Wilson, and also denying Joseph Glazier any recovery by virtue of his cross-action over and against the defendant W. A. Wilson, but awarding him a recovery on his cross-action against Kelly Wilson for the sum of $8,200, being the amount awarded against Glazier.

Defendant Joseph Glazier, doing business under the trade-name of Uncle Jo Bottling Company, alone has prosecuted this appeal, and the only complaint made is of the recovery against him, no assignment of error being presented to the refusal of his cross-action against W. A. Wilson.

■ The suit by plaintiff and intervener was under and by virtue of the following articles of Vernon's Annotated Texas Civil Statutes:

Article 4671, subd. 1: "When an injury causing the death of any person is caused by the wrongful act, neglect, carelessness, unskillfulness, or default of another person, association of persons, joint stock company, corporation or trustee or receiver of any person, corporation, joint stock company, or association of persons, his, its or their agents or servants, such persons, association of persons, joint stock company, corporation, trustee or receiver, shall be liable in damages for the injuries causing such death."

Article 4672: "The wrongful act, negligence, carelessness, unskillfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."

Article 4675: "Actions for damage arising from death shall be for the sole and exclusive benefit of and may be brought by the surviving husband, wife, children, and parents of the person whose death has been caused or by either of them for the benefit of all. If none of said parties commence such action within three calendar months after the death of the deceased, the executor or administrator of the deceased shall commence and prosecute the action unless requested by all of such parties not to prosecute the same. The amount recovered shall not be liable for the debts of the deceased."

Since by virtue of the provisions of article 4675 the mother was given an equal right with the father to institute the suit, the court did not err in overruling the special exception presenting the contention urged that the appellant was required to answer two suits, one by the plaintiff and the other by the intervener, instead of one suit in the name of both; especially so in view of appellant's exception addressed to plaintiff's original petition raising the point that Mrs. Fickas was a necessary party plaintiff. Had the suit been brought both by the father and mother as joint plaintiffs and damages had been allowed to both in the aggregate, it would have been necessary to apportion the same between them, since they were no longer husband and wife.

■ In impaneling the jury, over objection of defendant Glazier, the plaintiff and intervener were each allowed six peremptory challenges, and that ruling is assigned as error.

It appears that the trial of the case consumed an entire week and the statement of facts filed here, covering more than 1,100 pages, consists largely of testimony tending to support charges and counter charges of the plaintiff and the intervener of neglect of each to properly look after and care for Weldon Roberts; the award of his custody to his grandmother; the marriage of his father after his divorce from intervener; the divorce of intervener before her marriage to plaintiff and her subsequent marriage followed by another divorce; also of frequent shuntings of the boy from the home of one to the other. However, neither of them sought to recover any judg-

ment against the other; all of such testimony being a controversy between them as to who should reap the benefits of the recovery.

As against defendant Glazier plaintiff and intervener stood together in a common fight. He was not concerned in the division between them of the total recovery awarded; and we believe the court erred in allowing plaintiff and intervener an aggregate of twelve peremptory challenges instead of six, the maximum authorized by the statutes. Article 2148, Vernon's Ann. Civ.St.

In 33 Tex.Jur. p. 102, § 68, in discussing the death statute involved here, this is said: "The statute contemplates that but one suit shall be brought for damages sustained in such cases, and it pregnantly negatives a construction which would authorize a succession of independent actions by the several parties entitled."

The case of Hargrave v. Vaughn & Cumming et al., 82 Tex. 347, 18 S.W. 695, was a suit against Vaughn and Cumming, who were partners engaged in the business of apothecaries, and against J. R. Smith, who was their clerk, to recover damages for the death of plaintiff's child resulting from poisonous drugs sold by the clerk. In the opinion it is said: "The statute provides, that 'each party to a civil suit in the district court shall be entitled to six peremptory challenges.' Rev.St. art. 3084. We do not understand that by the word 'party' is meant 'person,' and that in a case in which there are more than one plaintiff or defendant to an action each will be entitled to six peremptory challenges, but that, where the issues to be tried between the plaintiffs and defendants are the same, then, within the meaning of the statute, there are but two 'parties' to the action."

In Baum v. Sanger Bros. (Tex.Civ.App.) 49 S.W. 650, 651, Sanger Bros. sued the firm of N. Cahn for debt and attached certain properties. Baum intervened, alleging that Cahn was indebted to him for rent and that the attachment was wrongful. It was held that Baum was not entitled to six jury challenges. The court said: "There was no contested issue between Cahn and Baum, and they stood together in the fight against Sanger Bros.; and it was proper to treat them all as defendants, and to restrict the number of challenges allowed them to the number prescribed by statute to 'each party to a civil suit.'" See, also, 26 Tex.Jur. § 101, p. 667, and authorities there cited.

In Gulf, C. & S. F. Ry. Co. v. Keith, 74 Tex. 287, 11 S.W. 1117, 1118, this was said:

"After the parties announced ready for trial the clerk, having the list of jurors already prepared, handed it to defendant by direction of the court, when the attorney for defendant objected, and demanded that the list be regularly drawn from the box, which demand the court refused, and compelled counsel to pass on the jury upon the list so furnished by the clerk. Defendant's attorney excepted to the ruling, and presented his bill of exceptions after the trial, which the court approved, with the qualification that he had refused the request because it came too late, because no reason was stated by counsel, nor did he show that he had or might suffer any injury from the action of the court; and stating further that, if counsel had shown that he had been injured by the ruling, the court would have granted a new trial. * * *

"We think the court should have required the clerk to draw the jury, after the parties announced themselves ready for trial in the regular way as provided by statute. The attorney was not bound to state his reasons for the demand, because the law allows his reasons in selecting and challenging peremptorily to remain private. A challenge for cause must be made known to the court. A peremptory challenge is a privilege, the cause of which the parties may wish should not be known, and the court cannot compel them to make it known at any stage of the proceedings, or for any purpose."

Accordingly, we have reached the conclusion that the action of the court in allowing plaintiff and intervener each six peremptory challenges was reversible error, and therefore the assignment directed to that ruling is sustained.

■ Another assignment complains of misconduct of the jury. Two of the jurors testified on the hearing of the motion for new trial as to what happened in arriving at the verdict. H. H. Corbin, foreman of the jury, testified in part as follows:

"Q. Now was anything said about the Glaziers being people of moderate means and not being able to pay much of a verdict? A. Not that I remember there wasn't.

"Q. You don't have any recollection of hearing any discussion of that kind? A. No. Their financial circumstances I don't think was mentioned—it wasn't that I remember of.

"Q. What was said if anything about them carrying, or the possibility of them carrying insurance on their trucks over there for protection on a case of this kind? A. Now there was someone, but I couldn't tell you who it was, someone said something about the trucks being insured. And someone else says, 'Why,' he says, 'it is a matter of fact that all such corporations, the state requires them to carry insurance on the trucks.' And that was the end of that question so far as I remember—that was all that I remember of that.

"Q. Corbin, are you in position to tell the court who mentioned that first, or would you undertake to say? A. No, I would not attempt to do that, because I don't remember, because there was somebody—just like I told you, there were times there that they were all talking. * * *

"Q. Mr. Corbin, was the fact that this remark was made by somebody—and some reply was made to it by someone else, about the insurance, did that affect the amount of the damages any that the jury allowed? A. I don't think so, no, because that question was just merely mentioned, and someone probably went on to—like I said awhile ago, I would not attempt to say who it was that made mention about it, but, whoever it was, it was someone else spoke up, just like I said awhile ago, and made the expression that all corporations, that is, the size of such corporations as that, was required to carry insurance, by the state law."

W. A. Rogers, another juror, testified at the same hearing in part as follows:

"Q. Was there any discussion about any insurance, the Glaziers carrying any insurance, or required to carry any, or anything at all about it? If so, tell the court about it. A. Well I could not be positive. I could not remember that, whether there was anything said about any insurance on it.

"Q. Do you mean you don't remember whether or not there was any discussion as to whether the Glaziers carried or were required to carry insurance on these trucks? A. Oh yes, sure—on the truck proposition. I thought you were talking about if either the man or woman carried insurance.

"Q. No. A. Oh yes, we discussed that in there, that the insurance company would have to pay it, no matter what was given it would not be the bottling company.

"Q. That was discussed in there? A. Yes, it was discussed in there.

"Q. Do you remember, or do you undertake to say who brought the matter up and mentioned it? A. Well, I would rather not. He is here on the jury again.

"Q. How? A. He will be here on the jury. You might ask him that—he will be up here—he is one of the witnesses back there.

"Q. I was just wondering whether you were positive or were not quite sure who did it? A. He mentioned it; he said it didn't matter what we give, the insurance company would have to pay it. And I made the remark I didn't give a damn who paid it, that whoever paid it there wasn't any use making them pay more than they were entitled to.

"Q. I see. * * *

"Q. Mr. Rogers, was the fact that this insurance was mentioned there—did it influence the amount of your verdict one way or the other? A. No, siree, didn't matter a damn who had to pay it, whether Uncle Jo or the insurance company, I figure I treated them both right, and we wasn't entitled to make the insurance company pay more than any person.

"Q. Do you know of your own knowledge whether it affected anyone else or not? A. Well I am not a mind reader and I couldn't tell you.

"Q. Did you take into consideration, in arriving at what you thought these people were entitled to, anything else except the evidence that you heard here? A. No no, no.

"Q. You were not influenced by anything else except the evidence? A. No no, no, that didn't bother me.

"Q. As a matter of fact this statement that you heard made about the insurance, you didn't know even that that statement was made that they had insurance, did you? A. No, I didn't know it.

"Q. You say that you were governed by the testimony solely and there wasn't any testimony that they had insurance was there? A. No, sir, there wasn't any insurance in the evidence.

"Q. Now are you prepared to say to the court 'absolutely I was not influenced at all by the matter that they probably had insurance or the discussion that they had insurance'? A. Well, that would not influence me any—just like I said, it would not matter who paid for it, whether the insurance company or Uncle Jo Bottling Company, or who

paid for it; I would not want to make the insurance company pay any more than I would Uncle Jo Bottling Company, because if they had any insurance on it that would not be right to pin down on them and make them pay in a damage suit.

"Q. In this discussion of the insurance, was anything said about the amount that they carried, or that the law required them to carry? A. One of them said that the law required them to carry up to twenty thousand dollars with the insurance company.

"Q. I will ask you if it is not a fact that you felt, when you signed that verdict there, Rogers, that that would be paid by an insurance company? A. I figured Uncle Jo Bottling Company would have to pay for it, and the insurance company together if they collected it."

No testimony was offered to show that the discussion of insurance, testified to by those two jurors, did not occur. And we believe it clear that probable injury resulted to appellant by reason of that discussion of insurance in the jury room, especially in view of all the facts relied on to show damages sustained by appellees in connection with the amount allowed, which we are inclined to believe to be excessive. Bell v. Blackwell (Tex.Com.App.) 283 S.W. 765; Davis v. Hill (Tex.Com.App.) 298 S.W. 526.

We quote the following from St. Louis S. W. Ry. Co. v. Robinson (Tex.Com.App.) 285 S.W. 269, 270, 46 A.L.R. 1507: "Where the evidence taken by the trial court on motion for new trial leaves it reasonably doubtful whether misconduct of the jury has resulted in injury, the motion should be granted. Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S.W. 606; Southern Traction Co. v. Wilson (Tex.Com.App.) 254 S.W. 1104; Moore v. Ivey (Tex.Com.App.) 277 S.W. 106. Here probable injury is clearly shown."

In Taylor v. General Exchange Insurance Corporation (Tex.Com.App.) 96 S.W.(2d) 70, 73, this was said: "Misconduct being established, the question of whether or not it had any effect on the verdict is not a fact issue to be determined by the testimony of the jurors. The rule has been many times announced by this court that, where misconduct by the jury in reaching a verdict is established and there is a reasonable doubt as to whether or not such misconduct affected the decision of the jury, the appellate court should set aside the judgment. The

fact that jurors testify that their verdict was not affected by the misconduct does not alter the rule." See, also, 31 Tex.Jur. p. 32, § 30, and numerous decisions there cited.

Accordingly, we sustain the assignment of error based on misconduct of the jury.

■ Since the judgment is to be reversed and the case remanded for another trial, and since the arguments of counsel for appellees before the jury, complained of in other assignments, may not be repeated on another trial, the merits of those assignments will not be determined on this appeal, because unnecessary.

By another assignment complaint is made of the refusal of the court to instruct a verdict for appellant, because the evidence showed conclusively that W. A. Wilson was an independent contractor with appellant to market his products, and therefore appellant was not liable for the negligence of Kelly Wilson, his employee and helper, notwithstanding the findings of the jury, in effect, that Kelly Wilson was appellant's employee and engaged in performing one of the duties of his employment; and irrespective of the testimony of Kelly Wilson that appellant and his wife, in charge of his office, frequently gave him instructions with reference to where to deliver products sold.

We quote from 23 Tex.Jur. § 8, p. 550, as follows: "A presumption of the relationship of employer and employee—master and servant—arises when it appears that one person is engaged in work for another. Consequently, the burden of proving that there was an independent contract falls upon the party asserting its existence as a defense to liability."

■ The facts cited and relied on in appellant's brief to support this assignment are not sufficient to establish the relationship of independent contractor as a conclusion of law, according to the test announced in National Cash Register Co. v. Rider, 24 S.W.(2d) 28, in opinion by Commission of Appeals, expressly approved by the Supreme Court. See, also, Scheuing v. Challiss (Tex. Civ.App.) 104 S.W.(2d) 1113, and decisions there cited; Alexander Film Co. v. Williams (Tex.Civ.App.) 102 S.W.(2d) 514; 18 R.C.L. § 245, p. 785. For that reason this assignment of error is overruled; but without prejudice to appellant's right to establish that relation upon another trial by proper proof if the same can be done.

A determination of other assignments not discussed above becomes unnecessary.

For the errors noted, the judgment of the trial court is reversed and the cause is remanded for another trial.