## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. ROBINSON. (No. 816–4481.)

(Commission of Appeals of Texas, Section A. June 16, 1926).

1. **New trial ⬤══52—Jurors' discussion of affliction of two of their number with hernia when considering compensation to be awarded for similar injury held to require new trial.**

Jurors' discussion of pain and suffering of two of their number from hernia when considering compensation to be awarded plaintiff for similar affliction *held* to require new trial, especially where one juror agreed to much higher verdict than he had theretofore favored.

2. **New trial ⬤══56.**

Motion for new trial should be granted by trial court, where evidence leaves it reasonably doubtful whether misconduct of jurors resulted in injury.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by B. A. Robinson against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff was affirmed by the Court of Civil Appeals (274 S. W. 263), and defendant brings error. Judgments reversed, and cause remanded to the district court.

E. B. Perkins and Adair Dyer, both of Dallas, and Crosby & Estes, of Greenville, for plaintiff in error.

Ocie Speer, of Austin, and C. B. Randell, of Sherman, for defendant in error.

BISHOP, J. Defendant in error, Robinson, instituted this suit against plaintiff in error, St. Louis Southwestern Railway Company of Texas, for personal injury alleged to have been caused by its negligence, and recovered judgment in the sum of $5,000, which was affirmed by the Court of Civil Appeals. 274 S. W. 263. He claimed that his injury caused him to be afflicted with hernia, from which he suffered, and would continue to suffer, pain.

Error is assigned on the action of the trial court in overruling motion for new trial complaining of misconduct upon the part of the jury. The testimony of jurors on consideration of the motion shows that a vote was taken upon the issue of liability before there was any discussion of the facts, and all of the jurors were in favor of a verdict for defendant in error. They then took a vote on the amount of damages to be awarded, with the result that one of the jurors, Mr. Lynch, favored a verdict for $1,000, while the other jurors were in favor of amounts ranging from $4,000 to $10,000. After these votes were taken by the jury, and while they were deliberating upon the amount of damages to be awarded, the conduct complained of occurred.

Mr. Davis, one of the jurors, testified:

"We got to talking about what a man suffered, and I just told them I knew what I suffered; that there was times that I suffered very much with rupture and would have to lay down in the field with my heels up against the plow or something, and I said I had to shun heavy work, and any sudden jerk or twist of the body it hurts a fellow, and I said it hurts me. I couldn't hardly tell you so you would know unless you were ruptured yourself.

"Q. You told the jury so they would know, what did you say as to what effect that would have on you when you got that kind of jerk or lift of that kind and what you would have to do when that occurred?" A. Get to hurting very bad and lay down with the heels up.

"Q. Did you tell the jury that? A. I think I did. I don't recollect what Mr. Wheatley said about his condition, only he was telling he had to be careful about what he done. He said his rupture was in I think. His didn't bulge out; it did at first, and went back in. I pulled down my breeches and exhibited the truss I wear. I didn't tell them I was affected the same way the plaintiff was affected. I told them I didn't know how he suffered the way he was ruptured, but I knew how I did. I have a rupture that bulges out. Yes; I described the effect the rupture has on me, the work I do. Mr. Wheatley said the effect it had on him was something similar, he told how it hurt him in various ways."

"The charge from the court if we rendered a verdict in favor of the plaintiff to pay the man for his suffering and the suffering he might go through in the future and that is a hard thing for anybody to get at at all, and I just merely explained that I knew something about a rupture of my own, that I didn't know what this other man suffered. No; I wasn't telling it on the theory that he would suffer in future as I would

suffer. I didn't know that he did, but my condition, that inward hurting is a hard matter, as a person couldn't tell what a man would suffer. I was telling in order that they could understand what a man could or would suffer. Under the charge of the court he instructed us to find for him if he could or would suffer."

"I don't know whether Mr. Wheatley talked to Mr. Lynch about his condition or not, he talked to me. He told it in the presence of the other jurors."

Mr. Burton, a juror, testified:

"In Mr. Davis giving this testimony as to how he was affected, Mr. Wheatley also giving his testimony before the jury or stating the facts as to how he was affected in connection with the plaintiff's testimony as to how he was affected did not have any influence on me in arriving at the amount of damages. Really I think I know why they were making that argument as I understand it; I think there was making that really seemed to be—Mr. Lynch, he didn't want to give that amount. As well as I recollect he was first in favor of giving $1,000 or $2,000. They were talking to Mr. Lynch at that time; I don't know whether it was for the purpose of influencing him or not. They were for a higher amount than he was. There was three or four around him there; I was on one side of the jury room, and they were on the other when this talk was being had. I don't think there was anybody else for a lower amount than Mr. Lynch."

[1] These statements made by Davis and Wheatley, which were by Mr. Burton termed "testimony," constituted misconduct on the part of these jurors. The admission of this "testimony" as evidence on the trial of the case, over objection, would have been reversible error. That this conduct was calculated to influence the jury to the prejudice of the rights of plaintiff in error in reaching a verdict cannot be questioned. That it did so is indicated by the fact that Lynch, who was in favor of an award of $1,000, agreed to a verdict of $5,000. It clearly appears that the rights of plaintiff in error have been disregarded by the conduct of these jurors.

[2] Where the evidence taken by the trial court on motion for new trial leaves it reasonably doubtful whether misconduct of the jury has resulted in injury, the motion should be granted. H. & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106. Here probable injury is clearly shown.

We recommend that the judgment of both courts be reversed, and the cause remanded to the district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.