LINCOLN v. STONE.

No. 1654—6112.

Commission of Appeals of Texas, Section A.

April 19, 1933.

C. P. Engelking, of Electra, T. R. Boone and Bonner, Bonner & Childress, all of Wichita Falls, and R. G. Storey and J. L. Goggans, both of Dallas, for plaintiff in error.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, and B. W. Tipton, of Electra, for defendant in error.

SHARP, Judge.

This suit was filed by Violet Stone, a married woman, not joined by her husband, John Minnick, against W. P. Lincoln, to recover damages for personal injuries alleged to have occurred on October 21, 1929, when, as an occupant of the car driven by Gaston Scott, the car in which she was riding ran into the back end of a truck going in the same direction and owned by W. P. Lincoln, which she alleged had no tail-light burning at the time. Scott, her companion, was instantly killed in the collision, and she was injured. By virtue of the answers made by the jury to special issues submitted to them, the trial court entered judgment in favor of Violet Stone and

against W. P. Lincoln in the sum of $20,000. This judgment was affirmed by the Court of Civil Appeals at Fort Worth. 42 S.W.(2d) 128. A writ of error brings the cause here. For the sake of brevity, we will refer to the opinion of the Court of Civil Appeals for a more detailed statement of the case, but we will make certain statements from the record as the necessities of this case may require.

Plaintiff in error contends that he was entitled to a new trial because of the misconduct of the jury during their deliberations, in that certain jurors made certain statements of fact not introduced in open court. The writ of error was granted on this contention.

The main issue of negligence against Lincoln for decision by the jury was whether or not the tail-light on the truck was burning at the time of the collision. The testimony upon this point was sharply conflicting. The owner of the truck contended that the tail-light on the truck was burning at the time of the collision, and defendant in error contended that on account of its condition that it was not burning and could not be made to burn. The tail-light was introduced in evidence. After the jury retired for their deliberations, they called for the tail-light, and the trial court, without the knowledge or consent of plaintiff in error, permitted the tail-light to be taken into the jury room. The jurors examined it. J. E. Walker, one of the jurors, stated to the jury during their deliberations, in substance, that he was in the garage business and was an expert mechanic. When the tail-light was brought in the jury room, all the jurors examined and discussed it. Being a mechanic, he was familiar with the wiring of tail-lights and headlights; that he knew what it took to make a light burn in the way of electric currents and sockets, and he was familiar with Ford lights, like the one before the jury; that he knew from his long experience as a mechanic and the way the light was wired up that it could not be made to burn. He went into detail with his explanations about the construction of Ford lights and gave his reasons why he knew a tail-light, wired as that one was, could not be made to burn. We will quote his own words: "* * * I explained that to the jury. As to whether or not the jury, so far as I know, accepted that and said it could not be made to burn, or whether some of them said that it could be made to burn, I will state that I don't think there was any argument about it. Yes sir, they all accepted the proposition that it not only was not burning, but could not be made to burn; there were several of them did not think it would burn before I said anything about it. In other words, there were some of them that understood it just like I did. Yes, I guess it is right that there were some who did not know one way or the other about the mechanism of the light. I guess that is right and, as I understand it, there were some did not have any experience, particularly with Ford lights at all. They had some questions on it. * * * I did understand the theory upon which they burned and understood the wiring, and I just explained to the jury why it was that they could not be made to burn. * * * Yes, I explained to them why it would not burn. In the first place, it had the wrong socket. And in the next place it was not grounded properly." (Italics ours.)

He further testified: "I stated a while ago that there was a fault in the grounding of that light. The loose socket, right here, that would make a faulty grounding. That matter did not come in the testimony anywhere— I don't believe that it did. I explained that matter to the jury—that the loose connection would make a faulty grounding and of course I made that explanation from my experience in handling Ford lights. I don't suppose it is a matter that an ordinary fellow would know without having some practical knowledge acquired in working on that kind of a light. The average man ordinarily would not know anything about the tail-light on a Ford car. I gained my knowledge from my practical knowledge acquired in working on that kind of a light. The average man ordinarily would not know anything about the tail-light on a Ford car. I gained my knowledge from my practical experience and told the jury that it had a faulty grounding, based on my experience. The jury asked questions about that and based on my experience, I answered them." (Italics ours.)

Some of the jurors were called to testify, and stated that there seemed to be several of the jurors who did not know much about tail-lights and how they operated; that the tail-light was carefully examined and discussed by all the jurors during their deliberations. The record further shows that some one asked Dunn, one of the jurors, if he thought it would burn that way, and he stated that he did not think it would; that Walker also explained it to them. After discussing the single contact and double circuit theory, they all agreed that the light not only was not burning at the time of the collision, but it never burned and could not be made to burn.

Plaintiff in error, during the trial, had introduced an automobile mechanic, who testified that he was in the employ of plaintiff in error, and that about three or four days before the collision he placed this tail-light on the truck in question, that the wiring was new and that it would burn, and when the truck left the shop the tail-light was burning. The testimony upon this question is quite voluminous, but the above statement will suffice for the purposes of this opinion.

▮ The primary purpose of the law is to give litigants a fair and impartial trial. Every safeguard is thrown around the trial to accomplish this end. The judge is not permitted to confer with the jury, only in open court. Article 2197, R. S. 1925. All testimony

must be received by the jury in open court, where all parties may hear it. The courts are uniform in holding that it is improper for the jury to receive new testimony during their deliberations. To this end the Legislature enacted article 2234, R. S. 1925.

The rule is now settled that, where it appears that the jury has been guilty of misconduct in receiving new testimony, that upon a consideration of the whole testimony introduced before the trial court it is reasonably doubtful whether or not the new testimony received affected the decision of the jury upon any material issue, it is the duty of the trial court to grant a new trial; if in such case a new trial is not granted by the trial court, then it is the duty of the appellate court to set aside the judgment rendered. Casstevens v. T. & P. Ry. Co., 119 Tex. 456, 32 S.W.(2d) 637, 73 A. L. R. 89; Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; St. Louis S. W. Ry. Co. v. Robinson (Tex. Com. App.) 285 S. W. 269, 46 A. L. R. 1507; St. Louis S. W. Ry. Co. v. Lewis (Tex. Com. App.) 5 S.W.(2d) 765; St. Louis, S. F. & T. Ry. Co. v. Rutland (Tex. Com. App.) 292 S. W. 182, 183. The testimony showed that several of the jurors were not familiar with how the current operated in tail-lights and asked questions about it, and the juror Walker explained it to them. We think this record shows that original evidence was introduced to the jury during their deliberations which affected their decision upon a material issue. Applying the foregoing rule to the facts of this case, the judgment should be set aside.

We recommend that the judgments of the Court of Civil Appeals and the trial court be reversed, and this cause be remanded to the district court for another trial.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.