### WHITEHEAD v. TEXAS & P. RY. CO.
### No. 13178.

Court of Civil Appeals of Texas. Fort Worth.

June 7, 1935.

Rehearing Denied July 12, 1935.

Jones & Jones and Franklin Jones, all of Marshall, and Raymond E. Buck, of Fort Worth, for appellant.

R. S. Shapard, of Dallas, and Cantey, Hanger & McMahon, W. D. Smith, and F. T. Denny, all of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

The Texas & Pacific Railway Company maintains in its yards in Fort Worth certain coach tracks on which passenger coaches are placed to be serviced before being used. Between those tracks are what are termed air hose boxes from which compressed air is taken through hose connections with pipes leading into the boxes. The compressed air is used in cleaning the coaches. The air hose boxes are equipped with a top or lid by means of which the box is closed when compressed air is not needed, but left open while the hose is inserted and in use.

A. G. Whitehead was employed by the railway company as an electrician. His duty was to inspect and repair the electric wiring in the coaches. During the month of March, 1933, and about 11 o'clock at night, he was on duty, and while passing along the coach tracks in the discharge of the duties of his employment, he stepped into an open air hose box and sustained an injury as a result.

He instituted this suit to recover damages resulting from that injury, and from an adverse judgment he has prosecuted this appeal.

The grounds upon which he sought a recovery were negligence in failing to furnish him a safe place to work, in that the air hose box was left open without his knowledge and into which he stepped while in the discharge of the duties of his employment; also negligence in failing to have the yards properly lighted, by reason of which he did not discover the open box until he stepped into it.

In addition to a general denial, the defendant urged the defenses of assumed risk and contributory negligence.

It was agreed by counsel on the trial that the services which plaintiff was performing related to interstate commerce and that the case is controlled by the Federal Employers' Liability Act (45 USCA § 51 et seq.).

In answer to special issues the jury found that plaintiff was injured as the result of stepping into the open air hose box, but further found that John Smith, defendant's employee who left it open, was not guilty of negligence in leaving it in that condition. They further found that the defendant was guilty of negligence in failing to have the coach yard properly lighted, and that such negligence was a proximate cause of plaintiff's injury; and that plaintiff was likewise guilty of negligence which proximately contributed to his injury in failing to keep a proper lookout for his safety. Also, that plaintiff assumed the risk of being injured under the circumstances shown in the evidence; and particularly the risk of working in the yards with the air hose boxes ordinarily left open. They assessed the total damages for plaintiff's injury at $5,000, but further found that 50 per cent. of that amount should be deducted by reason of his contributing negligence.

Upon that verdict the court rendered judgment for the defendant.

Misconduct of the jury was one of the grounds alleged in plaintiff's motion for new trial, and testimony introduced to sustain that allegation is shown in the record.

C. W. Cruce, one of the jurors, testified, on his voir dire examination before being accepted as a juror, that while he was working for the defendant a strike was called in July, 1922, and in obedience to that call he went out on a strike for three years, during which time he was sitting around wishing he had a job and feeling blue, but that fact would not influence him in rendering a just verdict in the case. Relying on that assurance, counsel for both parties accepted him as a juror. During the trial, in answer to a question by counsel for defendant, plaintiff testified that he was working as an employee of the defendant company during the strike period testified to by Cruce on his voir dire examination.

Some seven of the jurors testified to the effect that during their deliberations C. W. Cruce denounced plaintiff in violent and vicious terms, emphasized by oaths, as a scab, a strike breaker who had deprived other employees of their jobs; that he ought to have his neck broken; that he, Cruce, had an intense hatred for him; that he did not deserve a cent; that if he, Cruce, had known plaintiff was a scab he would not have served on the jury, but that he was going to give him a fair trial.

C. W. Cruce, himself, testified as follows: "When we finished up and we put down that $5,000.00 and gave him that,

I got up—no, I am a little too fast. I got up and made the suggestion, I says, 'Gentlemen, this is a complicated case. Now, if I had known that he was a "D" scab, I would not set on a jury before I was sworn in, but after I taken my oath I am going to give him just as fair a trial as any man on earth.' "

But he denied applying some of the epithets to plaintiff testified to by other jurors. According to his testimony and that of others, his denunciation of plaintiff did not occur until after the verdict had been agreed to, while, according to the testimony of others, it occurred during their deliberations and before an agreement as to what the verdict should be was reached, and all of them testified that the language used by Cruce did not influence them to agree to the verdict returned. Also that the amount of damages allowed, and to which Cruce assented, was the highest sum suggested by any juror; and at first one juror was not in favor of allowing plaintiff anything.

In the first place, the uncontroverted testimony showed a statement by Cruce that plaintiff was a strike breaker, with no testimony in the record that such was true; that statement being based upon an inference drawn by him from the testimony of plaintiff as to the time he had worked for the defendant, brought out incidentally in his examination on the witness stand.

We believe it clear that the remarks of Cruce referred to above constituted reversible error. It would be a travesty and a reflection upon our whole jury system to uphold a verdict tainted with such misconduct on the part of a juror who is selected on his assurance that he is free of bias or prejudice toward either of the parties. And, as repeatedly announced in our decisions, the verdict is vitiated even if only one juror is improperly influenced. Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Hines v. Parry (Tex. Com. App.) 238 S. W. 886; St. Louis S. W. Ry. Co. v. Lewis (Tex. Com. App.) 5 S.W.(2d) 765; Id. (Tex. Com. App.) 10 S.W.(2d) 534, and decisions there cited; Texas & P. Ry. Co. v. Van Zandt (Tex. Com. App.) 44 S.W.(2d) 950.

We shall not discuss other assignments at length, but suggest that on an-other trial the court should admit the proffered testimony of plaintiff as to why he did not have a lantern on the night of the accident, since we believe such testimony admissible on the issue of his contributory negligence, independently of the issue of assumed risk. And, further, that the facts which would or would not support the defense of assumed risk should be submitted to the jury rather than the submission of that defense in the form of a general charge, as was done.

For the error indicated, the judgment of the trial court is reversed, and the cause remanded.