L. L. TAYLOR V. GENERAL EXCHANGE INSURANCE CORPORATION.

No. 6717.   Decided July 22, 1936.
Rehearing overruled October 14, 1936.
(96 S. W., 2d Series, 70.)

*Mathis & Caldwell,* of Wichita Falls, for plaintiff in error.

*A. H. Britian,* of Wichita Falls, for defendant in error.

If there was any testimony to support the trial judge, this was a question of fact and his finding was conclusive, and his overruling the motion for new trial was an implied finding that the misconduct did not occur and, he having the exclusive right to determine the effect of the testimony of the witnesses, the Court of Civil Appeals was without authority to substitute its finding for those of the trial court. Smith v. Ferrell, 44 S. W. (2d) 964; Texas Employers Ins. Assn. v. Chocolate Shop, Inc., 44 S. W. (2d) 989; Bradley v. Texas & Pac. Ry. Co., 1 S. W. (2d) 865.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

■ This suit was brought in the District Court for the title and possession of an automobile valued at $525.00, and for the rentals and hire thereof alleged to have been of the value of $250.00, making the total amount in controversy $775.00. It is a suit of which a county court would have had jurisdiction and, therefore, one in which by Article 1821, R. S., 1925, the judgment of the Court of Civil Appeals is made final, unless an exception exists. The exception relied upon is an alleged conflict between the decision of the Court of Civil Appeals and prior decisions of other courts of civil appeals and of the Supreme Court.

Writ of error was granted because of the alleged conflict and a further consideration of the record has confirmed our original view that an actual conflict of decisions of a nature to confer jurisdiction upon this court is disclosed.

The only question presented for decision relates to the misconduct of the jury during its deliberation. The trial court refused to grant a new trial on that account, and its judgment was affirmed by the Court of Civil Appeals. 67 S. W. (2d) 1061. In so far as misconduct is predicated upon statements alleged to have been made by a juror, who claimed to be a mechanic, bringing to the jury expert information not adduced upon the witness stand, the Court of Civil Appeals held that the evidence was sufficient to present an issue of fact as to whether such misconduct occurred. Were that the only holding complained of, we would have no jurisdiction, for it does not conflict with any other decision. But there is another act of misconduct as to the existence of which the facts are without dispute. The holding of the Court of Civil Appeals as to it

appears to have been that there was an issue of fact as to its effect, but not as to its existence.

Upon the hearing of the motion for a new trial J. M. Franklin, one of the jurors, testified as follows:

"Q. After the jury had retired to the jury room to consider its verdict, did you make any statement in the jury room about L. L. Taylor.

"A. Yes.

"Q. What statement did you make, Mr. Franklin.

"A. I stated about the Grand-jury billing him about a car, but I did not know whether the car in question was the car or not; but my understanding was that they had ignored it some how.

"Q. Now, did you hear any other juror make the statement about Taylor and McElreath after you had gotten into the jury room and were considering your verdict.

"A. Yes, but I cannot call his name.

"Q. What was said.

"A. Well, I do not know whether I can repeat the exact words or not.

"Q. Well, not the exact words.

"A. I know that he said that the Grand Jury—they have billed Taylor and McElwreath for stolen cars."

On this question J. A. Menton, another juror, testified as follows:

"Q. In the trial of that case, did you hear any statement made by J. M. Franklin, in the jury room, after the jury had retired to consider of its verdict.

"A. Yes sir.

"Q. Tell us, Mr. Menton, what that statement was.

"A. Well, it was something pertaining to him being implicated, I believe, with a Mr. McElwreath.

"Q. With who being implicated.

"A. Either that, he did not know whether it was this car or some other car.

"Q. Did he say anything about an indictment.

"A. Well, there was something said about it, but whether there was any indictment, I do not recall that.

"Q. Did the jury discuss this question.

(Mr. Britain: We object to that as leading)

"Q. What was said by the other jurors in regard to Taylor and McElwreath.

"A. Well, I believe that I heard something about that, too, but I taken no part in the discussion at all, myself.

"Q. Did you hear the discussion, just in general.

"A. Yes, I heard it.

"Q. Now, was that before or after the ballot was taken.

"A. Do you mean the final ballot?

"Q. Yes.

"A. It was before the final ballot."

The only other juror to give testimony concerning this matter was T. F. Sonnamaker. His testimony does not contradict the foregoing, but rather corroborates it. It is as follows:

"Q. Did you hear Mr. Franklin say that Mr. Taylor, the defendant, had been indicted by the grand jury, for the theft of the car, that he did not know whether it was this car or not.

"A. I do not recall that. I know that McElwreath's name was mentioned.

"Q. Did you hear anything discussed about what the Grand Jury had done to McElwreath and Taylor about some stolen cars.

"A. Well, I do not remember just how it was. I know that McElwreath and Taylor's names were mentioned in the jury room.

"Q. And you heard it discussed about their being mixed up with something.

"A. Their names were brought up together.

"Q. Who was it mentioned their names, that they had been mixed up in something.

"A. I do not know who it was.

"Q. Was it Franklin.

"A. I do not know who it was.

"Q. Now, before you went in there, you heard Judge Cook rule out, when the question was asked, that McElwreath had nothing to do with his matter.

"A. Yes sir.

"Q. But they did discuss in there about McElwreath and Taylor being mixed up with that stolen car. How did they know.

"A. No, sir, in the jury room, that has always been my understanding, there has always been half a dozen talking at once and you cannot hear them all.

"Q. And you did not hear anything about it until they told you about it in the jury room, did you.

"A. No sir.

"Q. Until you went into the jury room, that was the first time that you heard that Taylor had been indicted, was in the

jury room after argument of counsel and the jury had gone to the jury room.

"A. Outside of this case, that is the only time.

"Q. Outside of the jury room, you had never heard of Taylor having been indicted.

"A. Only on this occasion.

"Q. You just heard it in the jury room.

"A. Yes sir.

"Q. And it wasn't introduced in evidence here, was it.

"A. No sir, they would not allow it.

"Q. Now then, this was all discussed before the final ballot was taken, was it.

"A. Yes sir.

"Q. And that happened in the jury room after every thing had been closed out here and Judge Cook did not permit any more testimony out here did he.

"A. No sir.

"Q. And that testimony was given by some one in the jury room.

"A. (No answer)

"Q. Those statements were made in the jury room, were they.

"A. Yes sir.

"Q. And you do not know whether it influenced any one or not, do you.

"A. No sir, I do not.

"Q. But you do know that that testimony was not introduced out here in the trial of the case, about his being indicted for stolen cars, you know that.

"A. Yes sir.

"Q. And it was discussed in the jury room after the close of the case and before you reached a verdict.

"A. I heard something about it.

"Q. You do not know what all was discussed in there, do you.

"A. No sir.

"Q. But you know that there was something like that discussed in there.

"A. Their names were linked together in something.

                    (Redirect examination)

"Q. You say that their names were mentioned together, did you hear any discussion that they were indicted.

"A. No sir, their names were just mentioned together

about something or other. Just as I say, there were five or six talking, but I did hear their names mentioned.

"Q. So far as you know, there was no discussion about any grand jury indictment of either of the parties, is that right.

"A. No sir, I do not know that there was any discussion about their being indicted.

"Q. Their names were just mentioned.

"A. They were mentioned together, just mentioned—I do not know what they were talking about. I just caught the part of it, I heard McElwreath and Taylor mentioned in a car theft ring, or something like that.

"Q. Mentioned in a car theft.

"A. Yes, they talked about the cars and they were mentioned together, their names were.

"Q. None of that discussion influenced your verdict, did it.

"A. No sir, I tried to pay no attention to the outside—I tried to pay no attention to the outside evidence."

The only conclusion warranted by this testimony is that misconduct was established by uncontradicted evidence. The Court of Civil Appeals did not hold to the contrary, but disposed of the question in this language:

"Likewise some juror is claimed to have made a statement that appellant had been indicted for the theft, but each juror who heard the statement says that it had no effect on his verdict."

■ Misconduct being established, the question of whether or not it had any effect on the verdict is not a fact issue to be determined by the testimony of the jurors. The rule has been many times announced by this Court that where misconduct by the jury in reaching a verdict is established and there is a reasonable doubt as to whether or not such misconduct affected the decision of the jury, the appellate court should set aside the judgment. The fact that jurors testify that their verdict was not affected by the misconduct does not alter the rule. Many cases could be cited, but the following will suffice: Casstevens v. Texas & P. R. Co., 119 Texas, 456, 32 S. W. (2d) 637; Lincoln v. Stone (Com. App.), 59 S. W. (2d) 100.

The judgments of the Court of Civil Appeals and the trial court are both reversed and the cause is remanded.

Opinion adopted by the Supreme Court July 22, 1936.

Rehearing overruled October 14, 1936.