REPUBLIC INSURANCE COMPANY v. N. L. HALE ET AL.

No. 6745.    Decided January 6, 1937.
Rehearing overruled February 10, 1937.
(99 S. W., 2d Series, 909.)

*Smithdeal, Shook, Spence & Bowyer* and *J. Louis Shook*, all of Dallas, for plaintiff in error.

Where there is a substantial remnant of a building remaining after a fire which can be used in reconstructing such building, and where the foundation of such building is intact after the fire and is of substantial value, such building is, as a matter of law, not a total loss. American Central Ins. Co. v. Terry (Com. App.), 26 S. W. (2d) 162; Royal Ins. Co. v. McIntyre, 90 Texas, 170, 37 S. W., 1068; Forrester v. New York Underwriters Ins. Co., 52 S. W. (2d) 233.

It was error for the trial court not to grant the motion of the insurance company asking for a new trial because of the fact that one of the jurors had inspected the house after the case had been submitted to the jury but before a ballot had been taken on the jury's verdict, and upon returning to the jury room made the statement that he had seen the building and that it was nothing but a hull and a total loss and that they might as well vote that it was, as such action constituted misconduct. Lincoln v. Stone (Com. App.), 59 S. W. (2d) 100; Houston & T. C. Ry. Co. v. Gray, 105 Texas, 42, 143 S. W., 606; Texas & N. O. Ry. Co. v. Parry (Com. App.), 12 S. W. (2d) 997; Elizondo v. Reagan (Com. App.), 55 S. W. (2d) 540.

*Neyland & Neyland,* of Greenville, and *F. E. McKee,* of Dallas, for defendants in error.

On proposition that building was a total loss. Fire Assn.

of Phil. v. Strayhorn (Com. App.), 211 S. W., 447; Glenn Falls Ins Co. v. Rogers, 43 S. W. (2d) 649; Export Ins. Co. v. Axe, 36 S. W. (2d) 572.

If the alleged misconduct of the jury did not render it reasonably doubtful as to what effect the statement of the juror made upon the verdict of the jury, the appellate court should sustain the action of the trial court in overruling a motion for new trial. Dick v. Yanez, 55 S. W. (2d) 600; Bradshaw v. Abrams, 24 S. W. (2d) 372; 3 Tex. Jur., 1083, sec. 761.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This suit was by N. L. Hale to recover on a policy of fire insurance issued by the Republic Insurance Company insuring a building in Commerce, Texas, against loss or damage by fire. The jury found the building was a total loss after the fire and the court rendered judgment for Hale, which was affirmed by the Court of Civil Appeals. 69 S. W. (2d) 483.

Application for the writ was granted upon the proposition among others complaining of misconduct of the jury.

The misconduct alleged is that the juror Reaves, who resided at Commerce, inspected the building in question after the adjournment of court on the afternoon that the charge was read to the jury; that during the jury's deliberations the following morning and after two of the jurors, Lovelace and Pierce, had twice voted "no" in answer to the issue as to whether the building was a total loss, Reaves stated to Lovelace in the presence and hearing of Pierce that he had seen the house on that morning and it was nothing but a hull and was a total loss and could not be rebuilt; that after the statement was made Lovelace and Pierce changed their negative answers and voted affirmatively that the building was a total loss; that Reaves' conduct in viewing the building and making the statement complained of was prejudicial.

It appears from the evidence heard upon motion for a new trial that Reaves after the second ballot on the issue of whether a reasonably prudent person would have used the remnant of the structure in rebuilding the house as it was before the fire, stated to Lovelace that he had had occasion to be in the vicinity of the building and that he had seen it and it was nothing but a hull and could not be rebuilt, that after the statement both Pierce and he voted to answer the issue that the building was a total loss.

It is not controverted that Reaves viewed the remnant of

the building after counsel had finished their argument to the jury and prior to the time the jury began its deliberations. Nor is it controverted that Reaves made the statement during the deliberations substantially as alleged.

It is the theory of counsel for Hale that the action and statement of Reaves did not influence Pierce and Lovelace to change their votes in that they had already made up their minds to make the change before Reaves made the statement. Counsel rely in part upon the testimony of Reaves himself that he had already made up his mind to vote that the building was a total loss before he saw what remained after the fire.

Reaves was asked on cross examination if it was his recollection that before he made the statement to Lovelace, Pierce had said "Let's take another vote, I am going to vote that it is a total loss." He answered that he had, and amplifying his answer, said:

"He was holding up his hand this way (indicating) and he said 'I wanted to be a little contrary. I wanted to be a little slow and see how you all were going to do, but I am going to vote with the rest of you.' Then I said: 'You had just as well, I had occasion to be in the vicinity this morning and inspected it and it is nothing but a hull.' "

Reaves testified further:

"Q: Mr. Reaves, you just whispered, soto voce, after he said he was going to vote that it was a total loss?

A: He sorter put his hand up this way, and I put my hand up and said: 'You might as well, it is a total loss.'

Q: That was after he told you he was going to change his vote?

A: Yes sir.

Q: You are positive about that?

A: Yes sir, when I made that affidavit to him I was not right positive, I told him I believed it was afterwards, but I would not be right positive, we took three votes.

Q: It was just before the third vote or just after it and after they both declared they were going to change their votes?

A: Yes sir.

Q: You are positive?

A: Yes sir; Mr. Hambrick, the foreman, was in the other end of the room, discussing something with some of them * * * and when they got through discussing it they took another vote, then the foreman signed the papers according to the court's charge and we came in and made our report."

Lovelace testified that when the court finished his charge to

the jury he told them they could go home and come back the next morning and consider their verdict but not to discuss the case that evening; that the jury began deliberating about 9 o'clock the next morning and that on the first two ballots he voted that the building was not a total loss and he thought Mr. Pierce voted the same way; that he afterwards changed his vote; that after the second ballot Reaves made a statement to him that the building was just a hull; that he had had occasion to be in that vicinity and had seen the house; that Pierce was sitting next to him (Lovelace) but he did not know whether Pierce heard what Reaves stated but that after that conversation both voted it was a total loss. On cross examination he testified as above set out to the effect that he was just stalling prior to the third ballot. He testified on cross examination also that Reaves' remark concerning the building's being a total loss did not have any influence upon him.

Pierce testified that on the first ballot the voting stood as to number two and ten; that he and Lovelace were the two and voted the building was not a total loss. In answer to a question as to whether he heard Reaves have a conversation with Lovelace about the building he said, "All I heard him say was that it was a hull, that is all I heard."

"Q: Did he say that he had seen it?

A: I did not understand him to say that he had seen it, but that's the way I taken it, that he had seen it.

Q: You understood from what he said that he had seen it?

A: I thought so from what he said, he said it was a hull.

Q: Before that time Mr. Lovelace voted that the building was not a total loss?

A: Yes sir.

Q: So did you?

A: Yes sir.

Q: After that did you vote differently?

A: Yes I told them all I would come over and to take another vote on it, and Mr. Lovelace he came over.

Q: That was after the statement made by Mr. Reaves?

A: I have got that in my mind, I can't hardly say whether it was or not, it was a few minutes * * * until we taken the vote.

Q: Anyway, Mr. Reaves made that statement before the final ballot was taken?

A: Yes sir.

Q: And after that you and Mr. Lovelace both voted that it was a total loss?

A: Yes sir.

Q: What did you think about it when you first went to vote?

\* \* \* \* \* \*

A: I did not think it was a total loss.

\* \* \* \* \* \*

On cross examination the witness testified:

"Q: Is this not a fact, that before the third vote was taken you announce 'Let's take another vote, I am going to vote with you all'?

A: Yes sir.

Q: And it was after that that Mr. Reaves said to Mr. Lovelace whatever he did about it? \* \* \*

A: The way I refresh my mind I think now it was.

Q: After he made that statement?

A: Yes I was ready to vote again, I was going to vote it was.

Q: Did Mr. Reaves' statement have anything to do with your changing your mind?

A: I hardly think it did."

Reaves testified that the occasion of his seeing the remnant of the building was that he had occasion before coming to court to go to a place a block below where the building was located to see a man; that when he arrived the man was not there; that he was on foot and near the building and curiosity took him to see it. He testified upon the point as follows:

"Q: What did you do?

A: I stopped at the southwest corner and looked into the window, the window was burned out and I went to the northwest corner and sighted down the wall, then I went to the northeast corner and looked down the front wall.

Q: There had been a good deal of talk, argument, the day before as to whether these walls were bulged?

A: Yes sir.

Q: And you went there to see for yourself?

A: Yes sir.

\* \* \* \* \* \*

Q: They argued that the walls were bulged and warped?

A: Yes sir.

Q: And that is the reason you sighted?

A: Yes sir.

Q: They also argued that unless the building could be used like it was it was a total loss, but if it could be used like it was,

it was not a total loss and you went to the window to see whether that could be done?

A: Yes sir.

Q: And you concluded from your examination that it was nothing but a hull?

A: Yes sir.

Q: And that it would have to be torn down, that it could not be used in that condition?

A: Yes sir.

* * * * * *

Q: From your inspection you thought it could not be rebuilt?

A: Yes sir.

Q: That was your opinion when you rendered the verdict?

A: Yes. I had already voted that way, it re-confirmed my belief."

Upon conclusion of the hearing of the testimony on the motion for a new trial it was agreed by counsel that the jury did not consider their verdict on the afternoon of the day on which the case was tried. The trial judge in ruling upon the motion stated it was clear from the testimony that Reaves' statement was made after the two jurors had announced they were ready to vote with the others, and that they would have voted that way regardless of what Mr. Reaves said.

■ There is no question but that the viewing of the house by the juror Reaves during the trial and before the jury began its deliberations, was misconduct. Texas Midland R. R. v. Brown (Com. App.), 228 S. W., 915. He states however that he had already made up his mind before he saw it that it was a total loss, and that the result of his inspection was merely to confirm the conclusion already reached.

It is recognized by counsel for Hale in their able and frank discussion of this question that if the testimony as a whole left it reasonably doubtful as to whether the conduct of Reaves was prejudicial, the court should set the verdict aside; but they insist in effect that a question of fact is presented by the evidence in the motion for new trial as to whether all reasonable doubt as to its prejudicial effect is removed, and that the trial judge's refusal to grant the motion settled the question. They cite Reaves' testimony that he was not influenced by the inspection, and that he had already made up his mind at that time that the building was a total loss.

■ It is well settled that the effect of a jury's misconduct is not

a fact issue; and that a juror's testimony as to whether the misconduct did or did not influence him in arriving at a verdict does not determine the question. Casstevens v. Texas & P. Ry. Co., 119 Texas, 456, 32 S. W. (2d) 637, 73 A. L. R., 89; Lincoln v. Stone (Com. App.), 59 S. W. (2d) 100; El Paso Elec. Co. v. Cannon, 128 Texas, 613, 99 S. W. (2d) 907; Taylor v. Gen. Exch. Ins. Corporation, 128 Texas, 118, 96 S. W. (2d) 70. As stated in the case last cited:

"Misconduct being established, the question of whether or not it had any effect on the verdict is not a fact issue to be determined by the testimony of the jurors. The rule has been many times announced by this court that, where misconduct by the jury in reaching a verdict is established and there is a reasonable doubt as to whether or not such misconduct affected the decision of the jury, the appellate court should set aside the judgment. The fact that jurors testify that their verdict was not affected by the misconduct does not alter the rule."

No evidence is disclosed by the record other than the testimony of Reaves himself as to whether his inspection of the building affected his verdict, to say nothing of the evidence relating to the change of votes by Lovelace and Pierce. It is reasonable to suppose that Reaves had some doubt about the matter before sighting down the walls to see if they were warped. He might have changed his mind after viewing the building, just as Pierce and Lovelace changed theirs after the statement was made by Reaves. The verdict had not been discussed by the jury at the time of his inspection, and had not been signed when subsequently he made the statement in the jury room. The jury's deliberations were not terminated until their balloting was beyond recall by them.

■ We think it is stating it mildly to say, as we do, that the testimony heard on the motion leaves it reasonably doubtful whether or not the misconduct affected the verdict. The motion for a new trial should have been granted by the trial court and the Court of Civil Appeals erred in affirming the judgment.

■ Counsel for the company contend very insistently that the testimony shows as a matter of law that the building was not a total loss. We have carefully reviewed the evidence and are of the opinion it is such as to warrant submission of the issue to the jury.

■ The able trial judge submitted the question to the jury in two issues; first, whether the building was a total loss, and

second, whether a reasonably prudent owner, uninsured, desiring a structure such as the one in question was immediately before the fire, in proceeding within a reasonable time after the fire to restore the building to its former condition, would have torn down those portions of the building left standing. Whether the building was a total loss is the ultimate issue; and we suggest that upon another trial a single issue be submitted inquiring whether the jury finds from a preponderance of the evidence that the building was a total loss; and that in connection with the issue the term "total loss" be defined substantially as follows:

"By 'total loss' is meant such destruction of a building as that, after the fire, there remains standing in place no substantial remnant thereof which a reasonably prudent owner, uninsured, desiring to restore the building to its original condition, would utilize as a basis of such restoration."

The foregoing form of submission and definition is suggested by Judge Hickman speaking for the Court in the recent case of Phoenix Assurance Company of London v. Stobaugh, 127 Texas, 308, 94 S. W. (2d) 428. The opinion is the result of a thorough review of the authorities on this question.

We take occasion to point out also that in the case quoted from it is held that the Court of Civil Appeals (62 S. W. (2d) 678) correctly decided it is error to permit witnesses expert in the building trade to testify, over objection, to their opinion as to whether a reasonably prudent owner, uninsured, and desiring to rebuild the house in question, would have used the remnant left standing as a basis for restoring the building to its former condition. The question as to what such owner would do is not a subject of expert testimony. Id., 127 Texas, 308, 94 S. W. (2d) 429.

The questions presented by the assignments not discussed need not recur upon another trial.

The judgments of the trial court and Court of Civil Appeals are reversed and the cause is remanded.

Opinion adopted by the Supreme Court January 6, 1937.

Rehearing overruled February 10, 1937.