## HUDDLESTON v. CITY OF AMARILLO.

### No. 5052.

Court of Civil Appeals of Texas. Amarillo.

July 3, 1939.

Rehearing Denied Sept. 11, 1939.

W. T. Brothers, of Amarillo, for appellant.

Underwood, Johnson, Dooley & Wilson and W. M. Sutton, all of Amarillo, for appellee.

JACKSON, Chief Justice.

This suit was instituted in the District Court of Potter County by the appellant, M. I. Huddleston, against the appellee, City of Amarillo, to recover the sum of $25,000 damages for personal injuries he claims to have suffered on account of the negligence of appellee, its servants, agents and employees.

He alleges that on or about November 10, 1937, he was an employee of the City and on said date he and Jack Burleson, another employee, were directed by C. R. Kennison, Superintendent of the City's Street Department, to grade the alley between Buchanan Street and Lincoln Street for a distance of approximately five blocks; that pursuant to such order and in discharge of his duty as employee, he with Jack Burleson began grading the alley and while operating the grader pulled by a team driven by Burleson, the grader blade came in contact with a manhole which was covered with dirt and completely hidden from sight; that the driver was unable, or in any event failed, to stop the team, the grader was overturned and appellant was forced to jump from his position to save

1096

himself, and as a result suffered the personal injuries for which he seeks recovery and fully sets out in his petition.

The negligence he relies on for recovery is disclosed by the special issues and the findings thereon, the substance of which we hereafter state.

Appellee answered by general demurrer, general denial, alleged that appellant assumed the risk and was guilty of contributory negligence; that Jack Burleson was a fellow servant whose guilty negligence caused the injuries or they were the result of an unavoidable accident,

In response to special issues the jury found, in effect, that the manhole in question was near the west side of the alley; that it was not placed in an unusual place; that the City failed to inform the appellant of the location of the manhole but the injuries were not the result of such failure; that the appellant had an equal opportunity with the appellee to know the location of the manhole; that he failed to keep a lookout; that such failure was negligence and such negligence was a proximate cause of his injury; that Jack Burleson failed to keep a lookout and such failure was negligence on the part of Burleson and a proximate cause of appellant's injury; that the injuries were not the result of an unavoidable accident, and that the appellant sustained damages in the sum of $5,000.

In response to special issues submitted at the request of appellee, the jury found that Jack Burleson did not fail to stop the team as quickly as he could after the grader hit the manhole and that appellant, with due regard for his safety, should have anticipated the possible presence of the manhole.

On these findings judgment was rendered that appellant recover nothing against the City and that the cost be taxed against him, from which judgment this appeal is prosecuted.

The appellant by proper assignments of error contends that the findings of the jury on the issues submitted and the judgment of the court thereon are without support in the testimony.

Inasmuch as the judgment is reversed we shall refrain from a recitation of or a discussion of the testimony but content ourselves by saying that an examination of the record convinces us that while the testimony on the material issues was controverted the evidence was sufficient to warrant the verdict and judgment.

The appellant assails as error the action of the court in refusing to set aside his judgment and grant a new trial because of the alleged misconduct of the jury.

M. V. Retherford, a juror, testified on the issue of misconduct that he had never before acted as a juror in a case submitted on special issues; that after the jury retired they selected Mr. L. S. Lahm as foreman, who read the issues, expressed his opinion as to the answers that should be given, asked each of the other jurors for their opinion, friendly discussion followed and another juror wrote the answers; that after the answers had been written, Mr. Cash, who was on the jury, said: "Boys, we ought to go over this, over those answers, because we can mighty easily get this all balled up."

In response to interrogatories propounded by appellant's attorney, the following testimony was elicited from the juror:

"Q. Was there any reply? A. I think our foreman said 'We have got it all fixed up, and we understand it.'

"Q. Did you hear anyone say, in substance, 'We have given him $5,000 and it is immaterial how those other issues are answered'? A. Well something similar to that.

"Q. Do you know whether that was Mr. Lahm that made that statement, the foreman? A. Yes, I am confident that he is the fellow that spoke of that, and some other fellow sanctioned it; * * * I didn't know a man in there.

"Q. I will ask you to state whether or not there was more than Mr. Lahm? A. Yes, there was one or two others spoke up here."

In response to interrogatories propounded by appellee's attorney, the following developed:

"Q. In answering the issue * * * or first question submitted to you, it was whether or not the manhole in question was in an unusual place; you recall that was the substance of the first question? A. Yes, I guess that was right * * *.

"Q. You recall there was a question to that effect? A. Yes, I am pretty sure, I think so.

"Q. Now then, in arriving at your answer to that, you took only into consideration the testimony that you heard from the witness stand, did you not? A. Well, that is what we should take.

"Q. That is what you tried to do; you tried to do your duty as a juror, did you not? A. I think so; that is what I was asked to do.

"Q. And you were answering the questions at that time without regard to what effect your answers might have upon the judgment that would be entered in the case? A. Well, I guess I just didn't understand it like I ought to; I know that.

"Q. What you mean is that * * * had you known that under the verdict that you had rendered, that Mr. Huddleston wouldn't have gotten $5,000.00, that you would have answered the question in another way, is that what you mean? A. Well, I would think so. We got it crossed up, is the way it was, the way we answered the question, and trying to give him something for his injuries, it is very plain we didn't understand him.

"Q. There was discussions among the jurors? A. Oh, yes sir.

"Q. As to what the answer should be? A. Oh, yes, tried to.

"Q. And did you answer the question from the best of your belief as from what the evidence presented on the stand showed? Is that the way you answered your question? A. That is the way I aimed to, but I' didn't understand it like I should do it.

"The Court: Let me ask the witness a question?

"Q. (By the Court) You mean by that, that you didn't understand what the effect of your answers would be? A. That is it exactly. It was after I got out and studied it over in my mind, or after you were reading it over, I knew I had made a mistake.

"Q. (By the Court) But did you answer any issues contrary to your wishes? A. Yes sir, it was contrary to what I was thinking, altogether, yes.

"Q. (By the Court) In other words, you thought the effect of the verdict would be to give Mr. Huddleston $5,000, and when you got to thinking it was changed because of the effect of the verdict? A. And you read off there that it was negligence on his part that he got hurt. Well, I didn't think that it was, never did; that is why I said I didn't understand.

"Q. You heard it read in open Court here when I read it? A. Yes, sir.

"Q. (By the Court) You didn't raise any protest then? A. Well, I didn't know ·I had any right to.

"Q. (By the Court) Did you hear me ask the jury if that was their verdict that was read, while the Clerk read it, and I read the issues? A. Well, in fact—

"Q. (By the Court, interrupting) Well, you heard me ask the jury if that was their verdict? A. Yes sir.

"Q. (By the Court) Was there any other question in there at all you felt then you would like to change your answer on, except the one as to Mr. Huddleston's negligence? A. Well, just one more, yes. I do think that the City ought to have designated these man-holes so that any man working could see them.

"The Court: I don't think there was any question propounded to you on that, but then was it the only question you would have changed your answer to when you heard them read? A. I don't think he was a particle negligent, because he was just a man laboring, doing the job.

"Q. (By the Court) In other words, you would like to change your answer on that one? A. Yes sir.

"Q. (By the Court) You didn't hear any more you wanted to change on? A. Only that we said the City wasn't negligent on the man-hole not being covered up, but I do think there should be some way of them designating them, but then only two questions is the only place I figured I had made a mistake in my decisions.

"Q. (By the Court) Mr. Retherford, that is your feeling at this time? A. Well, it would have been then, if I had understood it."

It will be noted that this juror never says that he answered the issues from the testimony but states he should have answered from the testimony, he tried to, was asked to do so, but he did not understand and, in substance, that he would not have assented to the verdict if he had understood that appellant would not have recovered the $5,000 damage the jury found he had suffered.

J. G. Cash, one of the jurors, testified:

"Q. What I am after is this: After they had all answered all of these issues and given the $5000, somebody probably asked that 'We had better recheck those issues'? A. Yes sir.

"Q. I am asking now if you didn't hear the statement made by one or more jurors

that it didn't make any difference about the issues, how they were answered because we have given the man $5,000? A. I don't know but what I said that myself.

"Q. Will you so testify that you did say that? A. Well, I kinda believe I did; I wouldn't be positive, but I believe I did, because the whole thing hinged on that. * * * To either not give or to give him —and we were all in favor of it. I kinda think I told them that whole thing hinged on that.

"Q. Upon the $5,000 being given? A. Yes, Sir, on the damages."

In overruling the motion for a new trial the court in his judgment says that he is "of the opinion and finds that said motion should be in all things overruled, the court being of the opinion and finding that no jury misconduct occurred while the cause was being considered by the jury and it further being found by the court that no alleged or claimed act of misconduct prejudiced the rights of the plaintiff in any way."

■ The law is that if there is a fact issue as to whether the misconduct of the jury occurred, the determination of such issue by the trial court is decisive unless he has obviously abused his fact finding authority. In the instant case there is no fact issue on the question of misconduct and it may be inferred from the testimony that the issues were not rechecked and the deliberation ended on account of such misconduct.

In Texas Employers' Ins. Ass'n v. Chocolate Shop, Inc., Tex.Com.App., 44 S.W.2d 989, Judge Critz says: "Where the evidence as to whether the alleged misconduct ever actually took place is conflicting, it is the province of the trial judge to determine the issue of fact, and his determination of such issue should not be disturbed, unless palpably wrong."

See also Brinker v. McDonald et al., Tex.Civ.App., 115 S.W.2d 1185, and authorities cited.

■ The law is equally well settled that where the evidence on the issue of misconduct is uncontroverted and misconduct on the part of a juror is shown the judgment will be reversed unless the testimony shows beyond a reasonable doubt that no juror was influenced thereby to assent to the verdict.

In Texas & Pacific Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307, 309, Commissioner Hickman, speaking for the Supreme Court, holds that: "The rule is definitely established by this court that, where misconduct by the jury in reaching a verdict is shown, a reversal will follow, unless the record negatives, beyond a reasonable doubt, that such misconduct influenced any juror in giving assent to the verdict."

The same Commissioner, in Taylor v. General Exchange Ins. Corporation, 128 Tex. 118, 96 S.W.2d 70, 73, uses this language: "Misconduct being established, the question of whether or not it had any effect on the verdict is not a fact issue to be determined by the testimony of the jurors. The rule has been many times announced by this court that, where misconduct by the jury in reaching a verdict is established and there is a reasonable doubt as to whether or not such misconduct affected the decision of the jury, the appellate court should set aside the judgment. The fact that jurors testify that their verdict was not affected by the misconduct does not alter the rule."

See also Republic Ins. Co. v. Hale et al., 128 Tex. 616, 99 S.W.2d 909.

In Walker v. Quanah, A. & P. Ry. Co., Tex.Civ.App., 41 S.W.2d 534, 535, the record discloses: "That one of the jurors stated that their finding on the issue of contributory negligence would make no material difference, as plaintiff would get the $3,000 damages assessed by them, regardless of how that issue was answered." Another one of the jurors contradicted this statement, saying: "* * * that in his opinion, if they found plaintiff was guilty of contributory negligence, the court would not allow him a recovery." This was a controversy between two of the jurors on the effect a finding by the jury that plaintiff was guilty of contributory negligence would have on his right to recover the $3,000 damages they had awarded him in their verdict. The two jurors differed on the law and the one who said he was influenced by this discussion relied on the statements of the juror who was wrong and assented to the verdict on account thereof. The court instructed the jury to "* * * 'answer each question having regard solely to the truth of the matter herein inquired about as nearly as you may be able to ascertain it from the evidence admitted on the trial of this case and from that alone, without regard to what effect any answer of yours may have on

the result of this suit.'" The trial court held that this did not constitute misconduct requiring a reversal of the judgment and this court in an opinion by the present writer affirmed the judgment. A writ of error was granted, and in 58 S.W.2d 4, the Supreme Court held, quoting from the syllabus, that: "Juror's statements during deliberation of case, submitted on special issues that finding of plaintiff's contributory negligence would not prevent his recovery, held misconduct requiring new trial."

Only two of the jurors were called to testify, and if their uncontroverted and unimpeached evidence is credible, the statement by the foreman and probably by others, in effect, that since the jury had given the appellant damages in the sum of $5,000 the answers to the other issues were immaterial, establishes misconduct of the jury and it becomes a question of law whether "the record negatives beyond a reasonable doubt that such misconduct influenced any juror in giving assent to the verdict."

There is no contention that the testimony was such as to authorize the court to direct a verdict. The evidence was sufficient to warrant the jury in finding the city guilty of negligence and acquit the appellant of contributory negligence.

We think the testimony indicates that the answers of the jury to the issues were not rechecked because of this misconduct and one or more of the jurors assented to the verdict on account thereof. Mr. Retherford says, in substance, that when the jury came in and the court and clerk read the questions and answers he discovered that he had been mistaken and had answered the issues contrary to what he thought the evidence revealed; that in his opinion the testimony showed that the city was guilty of negligence but he didn't believe that the plaintiff was guilty of contributory negligence; that when the court asked the jury if that was their verdict he did not know he had a right to protest. The jury was not polled. Had the jurors in their room rechecked the questions and answers we see no reason why this juror would not have discovered his mistake as readily at that time as he did when the questions and answers were read by the court and the clerk.

In Warnack v. Conner et al., Tex.Civ. App., 74 S.W.2d 719, the court says:

"The foreman, Tackett, in effect, stated that, since they had fixed the amount of the damages, the other issues were probably immaterial.

"The juror Willoughby testified that the statement caused him to make a different answer to question No. 13 than he otherwise would have made.

"The juror Williams testified the statement influenced him to answer 'Yes' to question 13.

"The only jurors called to testify were the ones named, and their testimony, as stated, is not contradicted.

"Upon practically the same facts misconduct was held to have been shown in Mann v. Cook (Tex.Civ.App.) 11 S.W.2d 572; Taylor v. Alexander (Tex.Civ.App.) 34 S.W.2d 903; and Carson v. Texas Pipe Line Co. (Tex.Civ.App.) 59 S.W.2d 328."

However, if the evidence does not clearly indicate that one or more of the jurors was influenced by the misconduct of the jury, the record certainly does not show beyond a reasonable doubt that one juror did not assent to the verdict by reason of such misconduct.

The judgment is reversed and the cause remanded.