OMAR H. BURKETT ET AL V. BILLIVE SLAUSON.

No. A-2934. Decided March 7, 1951.
Rehearing overruled April 4, 1951.
(237 S. W., 2d Series, 252.)

*Guinn & Guinn and Ernest Guinn,* of El Paso, *Ralph W. Yarborough* and *Louis Scott Wilkerson,* both of Austin, for petitioners.

Petitioners basing their contest of testatrix's will on the ground of lack of testamentary capacity, resulting from the use of narcotics, a discussion among the jurors, in the jury room while considering said issue, as to the effect of said narcotics

on members of their families and their friends constituted misconduct on the part of the jury, and the Court of Civil Appeals erred in not so holding. The court also erred in not holding that such misconduct and the expression of these preconceived opinions of the jurors that the use of said narcotics would not effect the testamentary capacity of testratrix, resulted in probable injury to petitioners, as a matter of law. Traders & Gen. Ins. Co. v. Linceum, 130 Texas 220, 170 S.W. 2d 585; Wald Transfer & Storage Co. v. Randolph, 56 S.W. 2d 197; Perez v. Consolidated Underwriters, 206 S.W. 2d 162.

*Cunningham & Ward* and *W. E. Ward,* of El Paso, for respondents.

The Court of Civil Appeals properly held that the alleged misconduct of the jury, if any, having been promptly stopped by the foreman who instructed the jury not to consider said remarks, was rendered harmless and that no injury resulted to petitioners as a matter of law as a result therefrom. Mecom v. De.Blanc, 140 S.W. 2d 915, writ of error dismsised; Blue Diamond Motor Bus Co., v. Hale, 69 S.W. 2d 228; Commercial Credit Co. v. Groseclose, 66 S.W. 2d 709, writ dismissed.

MR. JUSTICE SHARP delivered the opinion of the Court.

Billive Slauson, named independent executrix and beneficiary of the will signed by Kah Burkett, filed application for the probate of such will in the County Court of El Paso County, and it was refused probate in that court. An appeal was taken to the District Court, and the trial judge submitted the issues of testamentary capacity and undue influence. Based upon the answers of the jury to such special issues, the trial court ordered the probate of the will. The Court of Civil Appeals approved the judgment of the District Court. 235 S. W. 2d 505.

The main question presented here relates to the misconduct of the jury in considering the special issues submitted to them. The testamentary capacity of Kah Burkett was the main issue in the case. Petitioners contend that Kah Burkett lacked testamentary capacity, resulting from the use of narcotics, and that the jury was guilty of misconduct during their deliberations, and that such misconduct, as a matter of law, probably resulted in injury to petitioners.

Respondent was not related to deceased. The petitioners are her brothers, sisters, and nephews. The bulk of Kah Burkett's estate was bequeathed to respondent. She had never met the

deceased prior to the time deceased lay dying of cancer and was under constant medical and nurse care. Respondent was a practical nurse, and she met the deceased while working in such capacity. She worked one day for deceased in April, 1949, eleven days from May 6 through May 16, 1949, and on June 3, 1949, she returned and remained until testatrix's death on July 22, 1949. The will in controversy was dated July 10, 1949, and Mrs. Burkett's husband died on June 24, 1949. Respondent moved into the home with the dying Mrs. Burkett, and took over its management after the husband's death, refusing admittance to old friends of the testatrix.

On July 8, 1949, respondent went on duty at 3:00 p. m. She administered demerol to the testatrix at 4:30 and again at 7:00 p. m.; and right after that she called the attorney who drafted the will in question. The next morning, July 9, the testatrix was taken to the hospital, and respondent came on duty there at three o'clock that afternoon. She administered demerol at 4:50, at 7:00, and again at 9:25 p. m. During the night of July 9-10 testatrix was administered several more doses of demerol, and morphine was administered for the first time on the morning of July 10 at 7:00 a. m. Although respondent was not on duty, having finished her last tour of duty at 11:00 p. m. the evening before, she came to the hospital early on the morning of July 10, and claims that, acting on instructions from the testatrix, she called the attorney before the morphine was administered at seven o'clock. The attorney testified that she called him about ten o'clock, and told him that the testatrix wanted to see him. It is shown by the records kept by the hospital that at the time the testatrix signed the will she was under the influence of demorol and morphine, and that her condition was critical. Other details could be furnished, showing the amount of drugs that had been administered to testatrix, but the foregoing instances are sufficient for the purposes of this opinion.

The will was executed July 10, 1949, and testatrix died July 22, 1949. It is undisputed that the testatrix, prior to the execution of the will and at the time she signed same, was suffering from cancer. Under the directions of her physician she was given morphine and a drug called demerol, in order to relieve the intense pain and agony resulting from her affliction. It also appears that prior to the making of the will demerol and morphine had been administered to the testatrix, and that her system was under the influence thereof at the time she signed the will. The effect of demerol and morphine on her mental capacity was the real issue in the case. Petitioners

contended that these drugs had deprived her of the capacity to make a will. It was shown that demerol does tend to impair and confuse one's mental capacity and cause same not to function properly. Some of the witnesses testified that testatrix, on account of the amount of drugs administered to her, did not have the mental capacity to execute a will; while other witnesses testified that she did have the mental capacity to make the will. The evidence was sharply conflicting.

■ It is also undisputed that during the discussion by the jury concerning testatrix's mental capacity to make a will, several of the jurors related their experience with narcotics in their families, and that one of the jurors stated in substance that his father-in-law had suffered from cancer, and that morphine and demerol had been administered to him, and that they did not affect his mental capacity. Another juror related his personal experience with smoking marihuana and taking morphine. Still another juror related his experience with morphine and demerol in undergoing three operations. Some of the jurors testified that the admonition of the foreman against any discussion by the jury of their personal experiences came after the above-mentioned recitals; and despite the admonition of the foreman, the discussions would be resumed. Unquestionably these statements were improper, and related to a material issue in the case. They were not made under oath, and the contestants of the will did not have the opportunity to cross-examine the jurors about such experinces.

It is also shown that the jury argued approximately two and one-half hours regarding the testamentary capacity of deceased. They discussed and considered the effect of the use of demerol and other narcotics on the testatrix. It is also undisputed that the jury had not agreed to the answers to the special issues at the time the jurors made the foregoing statements.

In reaching their verdicts, many safeguards have been established to protect juries from considering testimony not received in an orderly manner on the witness stand. The Constitution of this State provides: "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." Section 15 of Article I of the Bill of Rights.

In the trial of a civil case the witnesses may be sworn and placed under rule. See Rule 267, Texas Rules of Civil Procedure. Rule 281 specifies what the jury may take with them to the jury room, and reads as follows:

"The jury may take with them in their retirement the charges and instructions, general or special, which were given and read to them, and any written evidence, except the depositions of witnesses, but shall not take with them any special charges which have been refused. Where part only of a paper has been read in evidence, the jury shall not take the same with them, unless the part so read to them is detached from that which was excluded."

Rule 282 requires the jury to be kept together under certain conditions. And other safeguards are thrown around the jury, as provided for in Rules 283, 284, 285, 286 and 287. During their deliberations the trial judge is not permitted to communicate with the jurors, except in open court. Texas Midland R. Co. v. Byrd, 102 Texas 263, 115 S. W. 1163, 20 L. R. A. N. S. 429; Houston Electric Co. v. Lee, 139 Texas 166, 162 S. W. 2d 692.

The trial court instructed the jury as follows:

"At all times in your deliberations carefully confine yourselves to the directions given by the court and the evidence admitted on the trial hereof. Carefully refrain from either considering or discussing other matters."

The above instructions were given by the court to protect the jury from improper influences in arriving at their verdict; to confine the jury in their deliberations to the consideration of the evidence admitted in open court; and to prevent the jury from receiving and considering evidence not received in open court and under oath, relating to the issues submitted to them. The above-mentioned rules were adopted for similar reasons.

It is undisputed that the jury did not obey the instructions given by the trial court, and they detailed their personal experiences with narcotics. It is quite obvious what effect this might have had upon the jury in arriving at their verdict. This character of unsworn testimony in the jury room has been condemned by the courts. Traders & General Ins. Co. v Lincecum, 130 Texas 220, 107 S. W. 2d 585; Wald Transfer & Storage Co. v. Randolph, Tex. Civ. App., 56 S. W. 2d 197; Perez v. Consolidated Underwriters, Tex. Civ. App., 206 S. W. 2d 162, writ refused, n. r. e.; Galveston, H. & S. A. Ry. Co. v. Brassell, Tex. Civ. App., 173 S. W. 522; Beaumont, S. L. & W. R. Co. v. Richmond, Tex. Civ. App., 78 S. W. 2d 232; St. Louis, S. W. R. Co. v. Robinson, Tex. Com. App., 285 S. W. 269, 46 A. L. R. 1507; Gulf, C. & S. F. Ry. Co. v. Young, Tex. Civ. App., 284 S. W. 664; El Paso Electric Co. v. Cannon, 128 Texas 613, 99

S. W. 2d 907; Morgan v. Maunders, Tex. Civ. App., 37 S. W. 2d 791; El Paso Electric Co. v. Gambrell, Tex. Civ. App., 292 S. W. 577; 3 McDonald on Texas Civil Practice, p. 1242, sec. 14.10; 53 Amer. Jur., p. 658, sec. 918. This Court has held in many other cases that jurors may not receive new testimony during their deliberations. Motley v. Mielsch, 145 Texas 557, 200 S. W. 2d 622; City of Houston v. Quinones, 142 Texas 282, 177 S. W. 2d 259; Maryland Casualty Co. v. Morua, Tex. Civ. App., 180 S. W. 2d 194, writ refused; St. Louis, S. W. Ry. Co. v. Mauney, 127 Texas 286, 93 S. W. 2d 377; Panhandle & S. F. Ry. Co. v. Ray, Tex. Civ. App., 221 S. W. 2d 936, writ refused, n. r. e.; Lander v. Jordan, Tex. Civ. App., 87 S. W. 2d 1109; Texas & P. Ry. Co. v. Gillette, 125 Texas 563, 83 S. W. 2d 307; Plaster v. Roper, Tex. Civ. App., 152 S. W. 2d 927, writ refused; Barnes v. Guthals, Tex. Civ. App., 137 S. W. 2d 883, writ refused, cor. judg.; Lincoln v. Stone, Tex. Com. App., 59 S. W. 2d 100; Barrington v. Duncan, 140 Texas 510, 169 S. W. 2d 462; Phillips v. Texas & P. Ry. Co., Tex. Civ. App., 223 S. W. 2d 258, writ refused, n. r. e.; Read v. Moser, Tex. Civ. App., 215 S. W. 2d 943.

This Court has repeatedly held that the fact that jurors testified that their verdict was not affected by the statements made in the jury room is not binding, and may be disregarded in passing upon the question of probable injury. City of Houston v. Quinones, 142 Texas 282, 177 S. W. 2d 259; Sproles Motor Freight Lines v. Long, 140 Texas 494, 168 S. W. 2d 642; Texas Milk Products Co. v. Birtcher, 138 Texas 178, 157 S. W. 2d 633; Republic Insurance Co. v. Hale, 128 Texas 616, 99 S. W. 2d 909; Barrington v. Duncan, 140 Texas 510, 169 S. W. 2d 462.

The misconduct of the jury in this case was indisputably established, and the question of probable injury became one of law for the courts. Courts must examine the entire record in the case when passing upon such a question. We have examined all the relevant facts in this case, and we conclude that the misconduct of the jury was calculated to work an injury to petitioners, and that it probably did so. Therefore the cause must be remanded for a new trial. Rule 327, Texas Rules of Civil Procedure; City of Houston v. Quinones, 142 Texas 282, 177 S. W. 2d 259; Motley v. Mielsch, 145 Texas 557, 200 S. W. 2d 622; Traders & General Ins. Co. v. Lincecum, 130 Texas 220, 107 S. W. 2d 585.

The judgments of the trial court and Court of Civil Appeals

are both reversed, and the cause is remanded to the trial court for a new trial.

Opinion delivered March 7, 1951.

Rehearing overruled April 4, 1951.