**STOREY et al. v. ZUNIGA et ux.**

No. 12464.

Court of Civil Appeals of Texas. San Antonio.

Nov. 26, 1952.

Rehearing Denied Dec. 31, 1952.

James V. Graves and Joe Burkett, San Antonio, for appellant.

G. Woodson Morris and Milton C. Regan, San Antonio, for appellee.

NORVELL, Justice.

This is the second appeal of this cause. A general statement of the case is contained in our former opinion reported in 239 S.W.2d 125. Upon the present trial, a recovery of $12,500 was awarded to plaintiffs.

Defendants, as appellants here, assert that said judgment should be reversed because of misconduct on the part of a juryman. The trial judge instructed the jury as follows:

"You are further instructed that you must not obtain nor receive, and in arriving at your verdict and in your deliberations thereon you must not discuss nor take into consideration any evidence not introduced and admitted upon the trial, nor any matters other than the charges given you by the Court, and the evidence introduced and admitted upon the trial, * * *.

"You are further instructed that a juror cannot become a witness in the case, neither on the witness stand nor in the jury room, nor elsewhere, and any juror who should relate to the jury his own experiences and knowledge, relating to the issues or questions propounded to you, would violate this instruction and violate his duty as a juror."

Despite this positive instruction of the court, the evidence adduced upon the motion for new trial shows without dispute that at the beginning of the jury's deliberations, either shortly before or immediately after the selection of a foreman, the

juror Claude C. Jeane stated that appellants' witness Blake McCreless had deserted his wife and two children and that he (Jeane) would not believe him "on a stack of Bibles." Three of the jurors including Jeane testified to this occurrence. No witness testified that the statement was not made. One former juror testified that Jeane said he had lived in the same block with McCreless and therefore knew that he had left his family. The obvious purpose of making the statement was to discredit McCreless' credibility as a witness. It was improper impeaching testimony, unsworn, and placed before the jury in flagrant disregard of the trial court's instructions. Misconduct was established, and the unsworn and improper testimony received was material. It remains for us to determine "from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." The question of probable injury is a matter of law to be determined in the first instance by the trial court and then on appeal by the reviewing court. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259.

The record of the trial of the case disclosed that McCreless testified upon a material issue and that his testimony contradicted that of certain witnesses for appellees. His credibility as a witness was therefore directly in issue.

The wide conflict of testimony in this cause is unusual. Mrs. Zuniga claimed that she was struck by a bull. Ordinarily, in such cases, there would be no controversy as to whether or not the animal actually struck the person claiming injury. Upon the first appeal of this case, which was taken from a judgment based upon a peremptory instruction, the defendants (appellants on this appeal) put on no testimony, and plaintiffs' evidence was uncontradicted except for that given by defendant H. D. Storey, who was called as an adverse witness. In our statement of the case we said that, "On July 18, 1944, A Braham bull, named Hitler, escaped from the arena or stock pens (located in Brackenridge Park

in San Antonio, Texas) maintained by defendants and ran loose upon the streets of San Antonio until he entered a yard adjoining the residence of Jesus Gallegos at 448 Terry Court. Gregorio Zuniga and his wife, Eduvijes Zuniga, the plaintiffs below and appellants here, were visiting Mrs. Gallegos at the time. Mrs. Zuniga was in the yard when the bull attacked her and inflicted serious bodily injuries."

At the former trial and upon the present trial a number of witnesses testified that Mrs. Zuniga was struck by the bull. However, the defendants produced two witnesses who testified that the bull struck no one in the vicinity of 448 Terry Court. These witnesses were Glen Hummel and Blake McCreless.

Hummel testified that he was a special officer employed by defendants, Storey and Woods; that after the bull got out of the arena and stock pens, he followed it upon a motorcycle; that he was never more than a few feet distant from the bull; that the bull went down the driveway at 448 Terry Court, and that he was never more than ten feet behind the bull while the bull was going through the yard. We quote direct from Hummel's testimony:

"Q. State whether or not while the bull was going through that yard (where Mrs. Zuniga claims to have been struck) whether or not you saw anyone in the yard. A. No, sir, there was not.

"Q. State whether or not while the bull was going through that yard if the bull hit any person. A. It did not.

"Q. You are positive? A. I am positive.

"Q. And how far were you back of the bull? A. Never more than ten feet."

Shortly after the bull went through the yard on Terry Court it turned down an alley and went past some stables to a vacant lot where it was shot and killed by Hummel.

McCreless' testimony was largely corroborative of that given by Hummel. He testified that he was at the sports arena helping out the Junior Chamber of Commerce which was a sponsor of the rodeo. He was

horse-back and followed the bull after its escape. There is a golf course near Terry Court. The bull crossed this course prior to going into the Terry Court yard. There was a fence constructed along the golf course, the bottom of which was rather high off the ground. Its purpose was to prevent persons on horse-back from riding onto and over the golf course. The bull and officer Hummel (on his motorcycle) went under this fence, but McCreless was unable to do so as he was on horse-back. He was, however, according to his positive testimony, in a position to see the premises at 448 Terry Court when the bull and Hummel went through the yard. He testified that he saw the bull pass through the yard and there was nobody else there at the time; that officer Hummel was right behind the bull and that he, McCreless, saw the bull all the time it was in the yard and until it reached the alley. McCreless testified that he did not see Mrs. Zuniga (who was pointed out to him in the court room) in the yard when the bull and Hummel passed through said yard to the alley.

The trial court considered that the evidence of Hummel and McCreless raised a jury issue. In addition to proximate cause issues, the court submitted a direct inquiry as to whether or not the jury believed "from a preponderance of the evidence, that on the occasion in question the defendants' bull struck plaintiff, Eduvijes Zuniga."

It seems to be plaintiffs' contention that the evidence so overwhelmingly preponderates in favor of the finding that the bull did strike Mrs. Zuniga that it cannot be said that the improper impeachment of McCreless (if we may call it that) constituted probable injury to defendants. It it said in the brief that, "The affirmative testimony of Paris Herron, Mrs. Eduvijes Zuniga, Gregorio Zuniga, and Juan Zuniga, along with the corroborative affirmative testimony of Doris Gonzales, creates an overwhelming preponderance of the evidence, as opposed to the negative testimony of McCreless and the impeached, or at least contradicted, testimony of officer Hummel, so that the jury had no choice but to answer that 'the bull did strike Mrs. Zuniga.' The statement of juror Jeane, then

was of no force and effect and influenced the jury's verdict on this issue in no respect. There cannot even be 'a reasonable doubt' that it did, let alone a 'reasonable showing that it probably influenced' same, as required under Rule 327, T.R.C.P."

This argument in effect assumes that plaintiffs' witnesses told the truth and that Hummel and McCreless did not. The record situation is that of a sharp conflict of testimony. The testimony of plaintiffs' witnesses, on one hand, and that of Hummel and McCreless, on the other, cannot be reconciled. The latter two witnesses stated that they were in a position to observe the bull's passage through the yard on the occasion in question and that the bull did not strike Mrs. Zuniga nor anyone else. The question raised by this conflicting testimony is not one for this Court to resolve, but presented a matter of credibility for the jury's decision. We cannot say, as a matter of law, that McCreless' testimony was immaterial or entitled to no weight as being negative in nature or merely cumulative of Hummel's, as urged by the plaintiffs. On the contrary, it appears that this testimony of McCreless, if *credited by a jury* would destroy plaintiffs' claim. The attack then made by the juror Jeane upon the credibility of McCreless by means of the unsworn and improper statement that McCreless had deserted his wife and two children struck at the very foundation of the defense. We think under the Supreme Court's holdings probable harm resulted. In Traders & General Ins. Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585, 587, the Supreme Court denounced "the ancient evil of hearing secret evidence, given without opportunity of cross-examination or the administration of an oath". In Burkett v. Slauson, Tex.Sup., 237 S.W.2d 253, the Supreme Court, in addition to the Lincecum case, cites some twenty decided Texas cases for the proposition that the receipt of unsworn testimony in the jury room has been condemned and that jurors may not receive new testimony during their deliberations. We need not repeat those citations here. They abundantly support the general proposition. The case which most nearly approaches the one before us on the

418

facts is that of Scoggins v. Curtiss and Taylor, 148 Tex. 15, 219 S.W.2d 451. In the cited case, a juror referred to the testimony of a witness as being "bribed testimony." The Supreme Court construed this remark to be equivalent of saying that the witness had been bribed by someone, presumably by the plaintiffs or someone connected with them, and held that the remark amounted to the giving of unsworn testimony in the jury room, to the probable injury of plaintiffs, thus necessitating a reversal. In the present case no construction of language is necessary. It is undisputed that the juror Jeane stated that Blake McCreless had deserted his family and that such statement was made in support of an argument that McCreless was unworthy of belief. We hold that it appears from the evidence adduced upon the motion for new trial and the trial of the case and from the record as a whole, that injury probably resulted to the defendants. (Additional cases in which an attack upon the credibility of a witness was made by unsworn testimony in the jury room are: Taylor v. General Exchange Ins. Corp., 128 Tex. 118, 96 S.W.2d 70; Elizondo v. Reagan, Tex.Com. App., 55 S.W.2d 540; Whitehead v. Texas & Pacific Ry. Co., Tex.Civ.App., 84 S.W.2d 779. While these cases were decided prior to 1941, they well illustrate the attitude of the courts in regard to the species of jury misconduct involved here. See also, comment in Thompson v. Goode, Tex.Civ. App., 221 S.W.2d 569, loc. cit. 572, citing Cloudt v. Hutcherson, Tex.Civ.App., 175 S.W.2d 643.

We might further say that the jurors' testimony that they were not affected by the improper receipt of evidence in the jury room is incompetent to preserve the verdict. In fact, this proposition is so well settled that a contention contrary thereto should not be urged in an appellate court. Burkett v. Slauson, Tex.Sup., 237 S.W.2d 253. "It is never permissible to allow a juror to preserve or destroy his verdict by testifying to the mental processes by which he reached the same". Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464; Great Western Investment Co. v. Scott, Tex.Civ.App., 254 S.W.2d 411, decided by this Court on October 1, 1952. Defendants' first point of error is sustained.

We are further of the opinion that appellants' fourth point should be and it is accordingly sustained. By this point it is contended that the trial judge improperly admitted the record of the testimony of Dr. Roy G. Giles, adduced at the former trial as no proper predicate had been laid therefor. We agree with this contention. Dr. Giles was not placed under subpoena, Fritsch v. J. M. English Truck Line, Inc., Tex.Sup., 246 S.W.2d 856, nor was it shown that he was outside the State, nor does it appear that any attempt was made to procure his testimony by deposition. Morris v. Davis, Tex.Civ.App., 292 S.W. 574.

Other matters raised and discussed in the briefs need not arise upon another trial. For the errors pointed out, the judgment of the trial court is reversed and the cause remanded for new trial.

Reversed and remanded.